SOUTH LOOKING GLASS DRAINAGE DISTRICT BOARD *v.*
GRAND TRUNK WESTERN RAILROAD COMPANY.

1. JUDGMENT — VACATION — MANDAMUS — JURISDICTION — DISCRE-
TION OF COURT.

   *Sua sponte* vacation of judgment for plaintiff intercounty drain-
   age board in its mandamus proceeding to compel defendant
   railroad company to remove obstruction to intercounty drain
   was proper, where accomplished before plaintiff had made
   application for leave to appeal from portion of judgment
   requiring plaintiff to bear 1/2 of the cost of such removal,
   as the circuit court still had jurisdiction in the proceedings
   and did not abuse its discretion in taking such action (CLS
   1956, §§ 280.421, 280.422).

2. MANDAMUS—REVIEW—SUPREME COURT—FINDING OF COURT—EVI-
DENCE.

   The Supreme Court's duty on review of mandamus proceeding
   is to determine whether there is any evidence to support the
   trial court's findings.

3. DRAINS—OBSTRUCTION—MANDAMUS—EVIDENCE.

   Evidence presented in mandamus proceeding by intercounty drain-
   age board *held*, sufficient to raise a question of fact and law
   whether the obstruction, of which plaintiff board sought re-
   moval, had been constructed by the defendant railroad com-
   pany or by the drainage board itself (CLS 1956, §§ 280.421,
   280.422).

4. MANDAMUS—DISCRETION OF COURT—SUPREME COURT.

   Mandamus is a discretionary writ and where there is evidence
   to support the circuit judge's denial thereof, the Supreme
   Court will not disturb it.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30A Am Jur, Judgments §§ 632, 648.
[2, 4] 35 Am Jur, Mandamus § 394.
[3] 17A Am Jur, Drains and Sewers § 93.

Appeal from Ingham; McDonald (Archie D.), J., presiding. Submitted May 26, 1959. (Calendar No. 47,892.) Decided October 12, 1959.

Mandamus by John Hudson, deputy director of agriculture, C. K. Colby, Shiawassee county drain commissioner, and Gerald L. Graham, Ingham county drain commissioner, comprising the Drainage Board of South Looking Glass Drainage District, against the Grand Trunk Western Railroad Company to compel removal of obstructions to intercounty drain. Writ denied. Plaintiffs appeal. Affirmed.

*Rosenburg, Painter & Stanton,* for plaintiffs.

*F. B. Henderson* and *E. C. Opperthauser,* for defendant.

KAVANAGH, J. Plaintiff-appellant filed a petition for a writ of mandamus in the circuit court under the provisions of CLS 1956, §§ 280.421, 280.422 (Stat Ann 1957 Cum Supp §§ 11.1421, 11.1422).

CLS 1956, § 280.421 (Stat Ann 1957 Cum Supp § 11.1421), provides, in part, as follows:

"Whenever any person shall obstruct any established drain, it shall be the duty of the commissioner to cause such obstruction to be removed. Any lessening of the area of a drain, which area shall be a cross section of the drain, shall be deemed to be an obstruction. The person causing such obstruction shall be liable for the expense attendant upon the removal thereof, together with the charges of the commissioner, and the same shall be a lien upon the lands of the party causing or permitting such obstruction, and all of the expense shall by the commissioner be reported to the board of supervisors, together with the report of his doings in the premises, and by said board ordered spread upon the land of the offending party, should the same remain unpaid."

CLS 1956, § 280.422 (Stat Ann 1957 Cum Supp § 11.1422), provides, in part, as follows:

"Railroad or railway companies, telephone and telegraph companies shall not obstruct established drains, nor shall they lessen the area of any drain through their track bed. The area herein referred to is a cross section of the drain. * * * In case any railroad or railway company, telephone or telegraph company shall obstruct any established drain, or has constructed or shall construct any bridge or culvert over the same, leaving less capacity to the drain than such drain is legally entitled to, the commissioner or the drainage board, as the case may be, may, by mandamus proceedings in the circuit court of the county in which such obstruction shall occur, compel the removal of such obstruction."

It is alleged that the defendant had constructed and placed obstructions in the South Looking Glass drain, an established intercounty drain located in Shiawassee and Ingham counties.

Plaintiff prayed for a writ of mandamus to compel defendant railroad to remove the obstructions.

By stipulation most of the basic facts were agreed upon. They are essentially as follows.

The drain basically follows the old natural watercourse of Vermillion creek. This drain services an agricultural area of 20,000 acres of land within its watershed. The South Looking Glass drain is an intercounty drain established by appropriate order on October 11, 1895. At that time the defendant had a single-track bridge crossing the drain. There are no records indicating the type of that bridge, but it is assumed to have been a trestle type.

In 1902 defendant railroad removed the single-track bridge and installed a double-track, 2-span steel girder bridge approximately 70 feet in width, with a large concrete center pier. The right-of-way at that time was changed to a double-track system.

In 1919 the railroad installed wooden timbers, technically described as helper bents, as additional supports for the bridge for the purpose of strengthening the bridge due to increased speed of traffic and increased weight of locomotive power.

In 1929 and 1930 the defendant railroad reconstructed this helper bent under the west span of the bridge and installed a large cement foundation in the stream bed, under the timbers or helper bents, that reinforced the bridge resting thereon.

The drain, as initially established in 1895 at this railroad bridge, was 12 feet wide at the bottom and had a maximum depth of 4.56 feet and a top width of 21.12 feet.

Over a period of years since 1925 defendant railroad has dumped fill consisting of rocks and broken cement under the bridge. The railroad admits dumping at least a couple of carloads of slag. There have been 2 clean-outs of the drain by the drainage board since its establishment, one in 1925 and the other in 1941.

At the request of the railroad, the drainage board drove steel sheet piling along the edges of the center pier and the west helper bent pier and also installed a concrete slab between the 2 piers. This work raised the bottom of the drain, since about 18 inches of fill were put in plus a concrete apron about 1 foot thick.

Defendant railroad claimed that the work it did did not constitute an obstruction of the drain; that the drain had been deepened and the installation of the cement slab and the fill in the bottom of the drain were done by the drainage board and not by the railroad. It further contended that the drainage board was guilty of laches by not earlier starting a suit to compel the removal of these obstructions.

Upon a hearing of the cause, the trial court rendered an opinion and made a specific finding that the west helper bent and the cement pier supporting

the same, installed by the railroad, were obstructing the drain. The court also found that the concrete apron installed by the drainage board was an obstruction. The opinion granted plaintiff a writ of mandamus ordering the railroad to remove the obstructions, but also ordered plaintiff to bear one-half of the costs incident to such removal. This opinion was dated March 5, 1957.

March 28, 1957, plaintiff made a motion to modify the opinion and for entry of judgment. The motion sought to have the court delete the requirement that plaintiff pay 1/2 of the cost incident to the removal of the obstructions and the reinforcement of the defendant's railroad bridge.

May 17, 1957, a judgment was entered, in effect denying the motion and granting a peremptory writ of mandamus and requiring the Grand Trunk Western Railroad Company to remove from under its bridge the timbers constituting the west helper bent under the bridge, and the cement foundation supporting the west helper bent, and the cement wings on each end thereof, and remove the steel sheet piling and the concrete poured between the steel sheet piling and the westerly face of the center pier of said bridge, as well as the steel sheet piling and the concrete poured between said piling and the easterly face of the cement foundation under the west helper bent, and also the concrete apron under said bridge lying between the center pier and the west helper bent. The judgment further provided that "the cost of said removal when made, shall be borne equally 1/2 by the plaintiff-petitioner drainage district and 1/2 by the defendant railroad company."

May 27, 1957, plaintiff prepared a notice of settlement of statement of proceedings and facts in which it gave notice that it intended to apply to the Supreme Court for leave to appeal from the judgment heretofore rendered, and that on the 3d day of June,

1957, at 1:30 p.m., a proposed statement of proceedings and facts in support of such application for leave to appeal would be presented to the circuit court for settlement. This notice was filed June 4, 1957.

June 3, 1957, the court on its own motion set aside and held for naught the judgment heretofore entered and filed in this cause on May 17, 1957, for a further consideration of the matter.

Briefs and reply briefs were made by both plaintiff and defendant over the next several months.

March 21, 1958, the court filed a supplemental opinion. The court now found that supports were placed under the span, they being known as helper bents, but 'that did not necessarily say that they constituted such an obstruction as prevents the flow of water. The court did not find that there was an obstruction, "in view of the holding that the cement floor placed there by the commission is the bottom of the drain." The court further said:

"It seems to this court that the history of cleanouts and maintaining support of bridge together with the intention to deepen the drain does not furnish sufficient grounds for the issuance of the writ."

A judgment was filed April 17, 1958, so holding.

Plaintiff-petitioner has appealed to this Court. It raises the following questions:

"1. Where the trial court granted plaintiff's petition for a writ of mandamus upon the finding that a supporting bridge structure of the defendant constituted an obstruction to a drain, did the trial court have authority to *sua sponte* vacate plaintiff's judgment upon plaintiff making an application for leave to appeal from that part of the judgment requiring plaintiff to pay 1/2 the costs of reinforcing defendant's bridge?

"2. Under the statutory mandamus proceeding for

the removal of a bridge support obstructing an established drain, did the trial court err in requiring plaintiff to absorb 1/2 of the estimated $43,000 costs for the removal of the obstruction placed therein by the defendant and for the reinforcement of the bridge?

"3. Where a concrete and timber bridge support was constructed by the defendant in the middle of an established drain and obstructs the drain, did the court err in dismissing the action in disregard of his findings thereon?

"4. Did the court err in finally dismissing the action for the reason that plaintiff was proposing to deepen the drain, there being no evidence thereon in the record?

"5. Under the undisputed evidence that the defendant railroad constructed within the drain a concrete supporting structure under its railroad bridge, is the plaintiff as a matter of law entitled to a writ of mandamus ordering the removal thereof?

"6. In view of the findings of the trial court in its initial opinion, did the trial court err in his conclusions of law in dismissing the action and in disregarding the judgment initially entered?

"7. Is the final judgment of the court dismissing the action contrary to the evidence and the law?

"8. Does a claim of laches constitute a defense against the removal of obstructions?"

Plaintiff had not yet made an application for leave to appeal from the judgment entered in the circuit court when the trial judge on his own motion vacated plaintiff's judgment. Therefore, the ordinary rules with respect to setting aside a judgment of the circuit court apply.

This Court has on numerous occasions held that a circuit court could set aside its judgment on its own motion as long as it retained jurisdiction. *J. L. Hudson Co.* v. *Barnett,* 255 Mich 465; *Raridan* v. *Bick,* 259 Mich 200; *Freedman* v. *Burton,* 281 Mich 208;

*Strausser* v. *Sovereign Camp of the Woodmen of the World,* 283 Mich 370.

The trial court still had jurisdiction of this case and did not abuse its discretion in setting aside its judgment on its own motion.

The other questions raised by plaintiff do not need discussion in view of our conclusion above reached, except to note that this was a mandamus proceeding and on review this Court's duty is to determine whether there is any evidence to support the trial court's findings. *Tanton* v. *McKenney,* 226 Mich 245 (33 ALR 1175).

There was testimony on the part of both plaintiff's and defendant's witnesses to the effect that the drainage board inserted the cement apron in the bottom of the drain and consequently raised the level of the drain and created the obstruction that was preventing the water from passing through. There was further testimony that the drainage board's agents had improperly and irregularly constructed sheet metal piling. There was sufficient evidence to raise a question as a matter of fact and law whether the obstruction in the drain was constructed by the defendant railroad company or by the drainage board itself.

It has been held many times by this Court that mandamus is a discretionary writ and where there is evidence to support the circuit judge's denial thereof this Court will not disturb it. *Winter* v. *Royal Oak City Manager,* 317 Mich 259; *Kosiba* v. *Wayne County Board of Auditors,* 320 Mich 322; *City of Berkley* v. *Township of Royal Oak,* 320 Mich 597; *State Highway Commissioner* v. *Ottawa Circuit Judge,* 339 Mich 390.

The judgment of the trial court is affirmed, with costs in favor of defendant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.