HAY v CITY OF HIGHLAND PARK

Docket No. 71469. Submitted January 20, 1984, at Detroit.—Decided
May 14, 1984. Leave to appeal denied, 419 Mich —.

John Hay and others who are former employees of the police and
fire departments of the City of Highland Park who retired after
1968 and are members of the retirement system established in
Chapter 19 of the Highland Park City Charter brought a
mandamus action in Wayne Circuit Court against the City of
Highland Park, the Highland Park Board of Trustees of the
Police and Fire Retirement System, and the mayor, finance
director, and treasurer of the City of Highland Park, alleging
that the term "final average salary", as used in the charter for
the purpose of pension benefits, should include, in addition to
the regular salary, shift differential pay, longevity pay, holiday
pay, call-back pay, terminal leave pay, and the premiums paid
for health and hospitalization insurance for the eye care pro-
gram and for the dental program. Following a bench trial,
Charles S. Farmer, J., found that those fringe benefits were
part of the "final average salary" as that term is used in the
charter and entered a judgment ordering that those fringe
benefits be used in the computation of the amount to which
each plaintiff is entitled as pension benefits. Defendants ap-
pealed. *Held:*

1. The fact that the level of employee contributions to the
retirement system have historically not been fixed on the basis
that the fringe benefits were part of the compensation upon
which pension benefit levels were computed, while not disposi-
tive, lends weight to the belief that such benefits should not be
used in the computation of pension benefits.

2. Since the pension board in its administration of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 579, 581.
60 Am Jur 2d, Pensions and Retirement Funds §§ 63, 65.
What constitutes "salaries," "wages," "pay," or the like, within
pension law basing benefits thereon. 14 ALR2d 634.
[3] 60 Am Jur 2d, Pensions and Retirement Funds § 71.
[5] 60 Am Jur 2d, Pensions and Retirement Funds § 72.

retirement system has long held that the charter language was not intended to include the fringe benefits as part of the basis upon which pension benefit levels are computed, great weight will be given to the board's construction of the charter language. The burden is on plaintiffs to establish cogent grounds for holding that the board's construction of the language is not reasonable.

3. The term "final average salary", as used in the city charter, does not include amounts paid as holiday pay, call-back pay, or terminal leave pay or the premiums paid for health and hospitalization insurance or the eye care or dental programs. That term does include amounts paid as shift differential pay or longevity pay.

4. The mayor, treasurer, and financial officer are not proper party defendants, since there were no pleadings or proof of acts by those persons in their individual capacities. The city, however, is a proper party defendant, since the city has the ultimate responsibility for payment of the pension benefits.

5. To the extent that there are unpaid pension benefits when the pension benefits are recomputed with shift differential pay and longevity pay being included with the regular salary, those increases shall be reduced by the amount that the retired employees would have had to pay in increased employee contributions had the employee contribution schedule also included those items in its formula. Plaintiffs are entitled to judgment interest on any judgment for any net unpaid pension amounts.

6. Those plaintiffs who were mistakenly made a part of a prior judgment involving pre-1968 retirees are properly a part of this action, but the defendants are entitled to a set-off of any amounts paid to those plaintiffs under the prior judgment.

Reversed and remanded.

1. MUNICIPAL CORPORATIONS — CITY CHARTERS — PENSIONS — REGULAR SALARY — FRINGE BENEFITS.

A city charter provision which defines the "final average salary" of an employee for pension benefit purposes as the "average of compensations as fixed in the city budget" does not provide a substantive basis for distinguishing between regular salary and fringe benefits where there is no evidence that the term "as fixed in the city budget" is a term of art or carries a special meaning and neither the regular salary nor the fringe benefits can be paid unless there is a specific appropriation in the city budget.

2. MUNICIPAL CORPORATIONS — PENSIONS — EMPLOYEE CONTRIBUTIONS
— FRINGE BENEFITS.

The fact that members of a municipal pension plan did not make
to a pension plan member contributions which took into ac-
count the value of the fringe benefits they received, while not
dispositive of the question of whether the computation of
benefits under the pension plan should include the value of
those benefits, lends weight to the belief that such fringe
benefits should not be used in the computation of pension
payments, particularly where there is a long history of fringe
benefits not being used to determine either employee contribu-
tions or benefits.

3. MUNICIPAL CORPORATIONS — PENSIONS — CITY CHARTERS — ADMIN-
ISTRATIVE LAW — JUDICIAL CONSTRUCTION.

The Court of Appeals will give great weight to the construction
given to the language in a city charter relating to a city
pension plan by the board charged with administering the
pension plan; the burden is on those seeking to overturn a
decision of such board relative to the meaning and effect of the
city charter language to establish cogent grounds for holding
that the board's construction of the language is not reasonable.

4. MUNICIPAL CORPORATIONS — PENSIONS — FINAL AVERAGE SALARY
— FRINGE BENEFITS.

The term final average salary, as used in the city charter provi-
sion of the City of Highland Park relative to the computation
of pension benefits for retired policemen and firemen, does not
include amounts paid as holiday pay, call-back pay, or terminal
leave pay or the premiums paid for hospitalization, eye care, or
dental insurance, but does include amounts paid as shift differ-
ential pay or longevity pay.

5. ACTIONS — PARTIES — MUNICIPAL CORPORATIONS — PENSIONS.

A mandamus action by retirees covered by a city pension plan
concerning the method of computation of benefits is not prop-
erly brought against the mayor, finance officer, or treasurer of
the city individually where there are no allegations or proof of
acts by those persons acting in their individual capacity; the
city itself is a proper party defendant in such an action where
the city is ultimately responsible for the payment of the pen-
sion benefits provided under the pension plan.

6. ACTIONS — PENSIONS — MUNICIPAL CORPORATIONS — COMPUTATION
OF PENSION BENEFITS — INTEREST.

A court, upon determining that pension benefits under a city

pension plan should be calculated using not only the regular salary but also including shift differential pay and longevity pay should order the recomputation of the pension benefits using a combined regular salary and shift differential and longevity pay basis; past due pension benefits are to be calculated by subtracting from the newly calculated pension benefits such amounts as the retirees would have had to contribute to the retirement system had their contributions, while employed, been based on the assumption that their pension benefits would be based upon both the regular salary and shift differential and longevity pay; a judgment for any net increase in past due pension benefits should be subject to the statutory judgment interest provisions (MCL 600.6013; MSA 27A.6013).

*Logan & Ashare* (by *Richard Ashare*), for plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *George E. McKean* and *H. G. Sparrow, III*), and *Norris Goudy,* Acting City Attorney (of counsel), for defendants.

Before: SHEPHERD, P.J., and J. H. GILLIS and M. WARSHAWSKY,* JJ.

M. WARSHAWSKY, J. Defendants appeal as of right from a February 8, 1983, judgment entered in favor of plaintiffs following a nonjury trial. The primary question in this appeal is whether certain fringe benefits should be included in the base for computing pension amounts payable to plaintiff-retirees.

Plaintiffs are former employees of the Highland Park police and fire departments who retired after 1968. They are members of a retirement system established in Chapter 19 of the Highland Park City Charter and are entitled to receive pension benefits thereunder. Defendant board of trustees is charged with administering the retirement system.

* Circuit Judge, sitting on the Court of Appeals by assignment.

The relevant sections of Chapter 19 are set forth below:

"19-2(12) *'Compensation' means the salary paid a member by the city for service rendered by him as a policeman or fireman;* provided, that the term 'compensation' shall not include any portion of salary in excess of the salary for the higher of (1) the third rank above the rank of patrolman, or (2) the third rank above the rank of pipeman, *nor shall it include remuneration for overtime, clothing and equipment, and travel expense.* If there be more than one classification within a rank, the highest classification within the rank shall be used for the purpose of the definition of 'compensation'.

"19-2(13) *'Final average salary' means the average of the compensations, as fixed in the city budget for the fiscal year in which employment by the city as a policeman or fireman last terminates, of the ranks held by the member during the 5 years of credited service immediately preceding his retirement;* provided, that a member's 'final average salary' shall not exceed the compensation for the third rank above the rank of patrolman or the third rank above the rank of pipeman, whichever is higher, as fixed in the city budget for the fiscal year in which the member's employment by the city as a policeman or fireman last terminates. If there be more than one classification within the rank, the highest classification within the rank shall be used for the purpose of this definition. If a member has less than 5 years of credited service[,] the period used in determining his final average salary shall be his total period of credited service.

\* \* \*

"19-18 *Age and service pension.*—Upon his retirement, as provided in this chapter, a member shall receive a straight life pension equal to *2 per cent of his final average salary multiplied by the number of years, and fraction of a year, of his credited service not to exceed 25 years.* His said pension shall be subject to sections 19-30 and 19-31.

\* \* \*

"19-30 *Pension escalation.*—If the compensation for the rank held by a member at the time his employment by the city as a policeman or fireman last terminates is subsequently increased or decreased[,] any pensions payable on account of his employment by the city shall be correspondingly increased or decreased." (Emphasis supplied.)

In June, 1977, plaintiffs filed a complaint for writ of mandamus and other appropriate relief, alleging that the formula for computing pension amounts should include not only regular salary but also certain fringe benefits. Defendants filed a counterclaim which will be discussed later in this opinion. Following a nonjury trial, the court entered a judgment on February 8, 1983, ordering that certain fringe benefits be included in the computation of average final compensation in determining the amounts of plaintiffs' pensions. The fringe benefit items in dispute are: (1) shift differential pay, (2) longevity pay, (3) holiday pay, (4) call-back pay, (5) premiums paid for health and hospitalization insurance, (6) premiums paid for eye care program, (7) premiums paid for dental program, and (8) terminal leave pay.[1] Defendants appeal as of right.

## I

### DID THE TRIAL COURT ERR IN HOLDING THAT THE LISTED FRINGE BENEFITS MUST BE INCLUDED IN THE BASE FOR CALCULATING PLAINTIFFS' PENSIONS?

Defendants first focus on the phrase " 'Final average salary' means the average of the compen-

[1] The judgment included three additional items, namely, sick leave, funeral leave, and personal leave. However, inclusion of these three items is not contested since the city's finance director testified without contradiction that these items were taken into account in computing the pensions.

sations, *as fixed in the city budget* as found in § 19-2(13) of the city charter. Defendants contend that only the regular salaries are fixed in the pay plan of the city budget, and that fringe benefits, on the other hand, are not fixed but are considered expenses which can be paid only with an express appropriation in the budget. We reject defendants' attempt to distinguish between fixed and non-fixed items in the budget. The finance director testified that only regular salaries are fixed in the pay plan (a predetermined schedule of pay by rank) in the budget. However, he stated that no item can be paid unless there is a specific appropriation for it in the budget. There was no testimony that the term "fixed in the city budget" in § 19-2(13) is a term of art or carries any special meaning. We find that the proffered distinction between fixed and non-fixed items is one of semantics rather than substance.

Defendants next assert that fringe benefits should not be included in the computation because the members' contributions to the system under § 19-34(b) of the charter did not take the value of the fringe benefits into account. While this factor is not dispositive, see *Banish v Hamtramck,* 9 Mich App 381; 157 NW2d 445 (1968), *lv den* 381 Mich 779 (1968), it does logically weigh in defendants' favor. It appears that defendants have for many years acted under the reasonable belief that fringe benefits were not to be included in the computation of either pension payments or employee contributions to the system. Plaintiffs' longtime acquiescence in this state of affairs weakens their present claim.

Defendants further contend that their reasonable and consistent construction of the retirement system provisions over the years should be given

great weight by this Court. This general principle was recognized by the Court in *Lansing Fire Fighters Ass'n, Local 421 v Bd of Trustees of City of Lansing Policemen's & Firemen's Retirement System,* 90 Mich App 441, 445; 282 NW2d 346 (1979), *lv den* 407 Mich 957 (1980):

"Additionally we point out that the board, being in charge of administration of the pension program, has reasonably interpreted the charter in light of objects and purposes sought to be accomplished. As such we find no cogent reasons for overruling the board's construction of the charter as it relates to the exclusion of accrued vacation time from retirement benefit computation. See *Michigan State Police Command Officers' Ass'n, Inc v Dep't of Public Safety,* 80 Mich App 278; 263 NW2d 47 (1977)."

Therefore, the burden is on plaintiffs to establish cogent grounds for overruling the board's decision.

Plaintiffs point to § 19-2(12) of the charter which expressly provides that compensation shall not include "remuneration for overtime, clothing and equipment, and travel expense". Plaintiffs reasonably assert that express exclusion of some fringe benefits implies inclusion of those not mentioned. See, *e.g., Sebewaing Industries, Inc v Village of Sebewaing,* 337 Mich 530, 545; 60 NW2d 444 (1953). In our opinion, however, this general rule should not determine the outcome of this case. One reason for not applying this general rule is that some of the fringe benefits listed in the judgment are not of the same kind as those expressly excluded in § 19-2(12). For example, the exclusion for clothing and equipment and travel expenses merely refers to reimbursement of out-of-pocket expenses incurred by the employees. Such reimbursement is not a fringe benefit in the true sense and is quite different from many of the items

listed in the judgment. Furthermore, the term "salary" is ambiguous as used in this context and is not defined in the charter. It is unwise to assume that the drafters intended to include all other fringe benefits merely because they chose to exclude three specific types of employee remuneration from the pension calculation. Rather, it appears just as reasonable that had the drafters intended "salary" to include all fringe benefits, they would have expressly so stated.

The trial court found *Banish v City of Hamtramck, supra,* controlling. The plaintiffs in that case were retired firemen and policemen entitled to pensions at the rate of one-half the pay of the rank in which they served at the time of retirement. The charter provided that in the event of any change after retirement "in such rate of pay" the pension thereafter would be "at the rate of 1/2 the pay for said rank so changed". *Banish, supra,* 9 Mich App 385. For approximately 20 years, the retirees received their 50% share of adjustments whenever pay changes were approved for active employees. In the fiscal year 1959-1960, the common council adopted a proviso increasing the pay of its Class B employees but providing that retirees would not receive one-half of the increment. The proviso stated:

" 'that the basic pay of the Class B employees for all intents and purposes shall be the same as was prevailing in the 1958-1959 fiscal year and that any *amounts paid over and above such basic pay shall be construed as payments only while in active service* for the city of Hamtramck and *not constituting part of any salary upon which pension payments are to be computed and paid in the future.' "* 9 Mich App 385-386. (Emphasis in *Banish.)*

The opinion refers to the increment over basic pay paid only to those in active service as "in service pay".

The plaintiff retirees sought a writ of mandamus requiring payment of increased pension benefits. The defendants argued that, under the charter provision, plaintiffs were entitled to one-half of regular salary and not any other pay. The testimony at trial indicated that the proviso was a deliberate austerity measure by the common council intended to reduce pension outlays. The Court of Appeals held:

"The distinction sought to be created between 'regular salary' and 'any other pay' is clearly foreclosed by the charter language, which speaks simply in terms of 'pay.' A fair reading of the charter language requires that the term 'pay,' as used in the clause '1/2 the pay for said rank so changed', be interpreted to mean the regular compensation currently paid to those of the rank held by the retiree at the time of his retirement. The crucial question, then, is what is regular compensation? We have no hesitancy in holding, on the facts of this case, that in service pay and hazard risk pay are regular compensation. Those terms were devised in an attempt to take two bites out of the cherry with the deliberate purpose, and none other, of depriving retirees of the full pension rights which the charter mandates."

"The charter provision requiring escalation or reduction of retirement pay expresses a purpose that retirement benefits will, in fact, escalate and reduce as the pay of the rank in which the retiree was serving at the time of retirement changes. The defendants' argument would permit the city to keep the retirees' pay constant —or, indeed, to effect only reductions and no increases —by simply adopting the correct nomenclature and dividing the pay of active service employees into categories plausibly packaged and labeled. We look beyond form to substance." 9 Mich App 388-389.

The Court further found that under the facts there

involved, holiday pay and longevity pay were part of regular salary and hence, "pay".

We find that *Banish* should be distinguished from the present case. In contrast to *Banish,* there is no indication that defendants in the instant case deliberately sought to prevent retired members from sharing in pay increases awarded to active service employees. Rather, it appears that defendants have reasonably and consistently interpreted the term "final average salary" as not including fringe benefits. Furthermore, *Banish* simply held that the term "pay" in the charter included not only regular salary but other types of pay as well. It does not necessarily follow that the clause "salary paid a member" in § 19-2(12) was intended to include all types of fringe benefits.

Plaintiffs cite several decisions from other states in support of their contention that fringe benefits should be included.[2] However, a fair number of other courts have held in varying circumstances that pensions based on "salary" do not include fringe benefits. See, *e.g., State ex rel Henderson v Schuele,* 25 Ohio St 2d 179; 267 NE2d 590 (1971); *City of Manitowoc v Police Pension Bd for City of Manitowoc,* 56 Wis 2d 602; 203 NW2d 74 (1973); *Hilligoss v LaDow,* 174 Ind App 520; 368 NE2d 1365 (1977); *Jahn v City of Woodstock,* 99 Ill App 3d 206; 425 NE2d 490 (1981).

An Illinois appellate court in *Jahn v City of Woodstock, supra,* interpreted a provision granting a disability pension of 50% of the "salary" attached to the member's rank on the date of retirement. The court found some guidance in a defini-

---

[2] *E.g., State ex rel Parsons v Ferguson,* 46 Ohio St 2d 389; 348 NE2d 692 (1976); *Newhouse v Bd of Pensions & Retirement,* 33 Pa Commw Ct 81; 380 A2d 1315 (1977); *Hebbler v New Orleans Fire Dep't,* 299 So 2d 825 (La App, 1974).

tion of the word "salary" in another provision of the pension code. The court also stated:

"We note that the word 'salary' has been defined in other contexts to mean a 'fixed annual or periodical payment' [*Commonwealth Life & Accident Ins Co v Bd of Review,* 414 Ill 475, 485; 111 NE2d 345 (1953)]. The word is most often used to mean a fixed amount rather than a fringe benefit such as insurance premiums would be considered.

"While no case in Illinois has decided this point, we are assisted by a number of cases from foreign jurisdictions which have addressed the specific issue raised by the parties before us.

"In *Hilligoss v LaDow,* 368 NE2d 1365 (Ind App, 1977), an Indiana statute with the same language as that in § 3-144.2 was examined to determine whether employer insurance programs and clothing allowance payments form a part of the 'salary' of policemen or 'monthly wage' of firemen for computing pension benefits. The court held that such benefits were not a part of a 'salary' or 'monthly wage' under the applicable pension provisions. The court found that the legislature intended a restricted meaning because it had not used more embracing terminology than it did.

"A similar result was reached by the Supreme Court of Wisconsin in *State ex rel City of Manitowoc v Police Pension Bd,* 56 Wis 2d 602; 203 NW2d 74 (1973). In this case the State appealed from a pension board determination that a retired police officer was entitled to a pension that included health and life insurance contributions by the employer. The statute provided for a pension equal to one half of the police officer's monthly compensation, which the court interpreted to exclude health and life insurance coverage. The court noted that the legislature could provide otherwise if they deemed it the better policy.

"A similar result was reached in *State ex rel Henderson v Schuele,* 25 Ohio St 2d 179; 267 NE2d 590 (1971), where the statutory wording provided for 'salary for the rank held' was deemed by the court to not include

employer contributions of insurance premiums in the computation of police and fire pension benefits.

"We deem the reasoning of our sister States to be most persuasive." 99 Ill App 3d 209-210.

Based on the arguments and authority discussed above, we conclude that final average salary does not include holiday pay, call-back pay, terminal leave pay, and payment of hospitalization, eye care, and dental insurance. We further find that shift differential pay and longevity pay are to be included in computing final average salary. According to the testimony, shift differential refers to a small premium paid to employees who work the second or third shifts. Longevity refers to. increased amounts paid to employees based on years of service, regardless of rank. Unlike the other types of fringe benefits, both of these items result in enhancement of the regular periodic salaries paid to employees based on their individual circumstances. We conclude that final average salary does include shift differential pay and longevity pay.

## II

### WAS JUDGMENT PROPERLY ENTERED AGAINST DEFENDANT CITY OF HIGHLAND PARK AND THE CITY'S MAYOR, FINANCE DIRECTOR, AND TREASURER?

This Court agrees that plaintiffs have no cause of action against the individual defendants, *i.e.,* the mayor, finance director, and treasurer. Defendants correctly point out that no proofs were adduced against these individuals. However, we find that the City of Highland Park, being ultimately responsible for payment of the pension benefits under the retirement system established

in Chapter 19 of the city charter, is a proper defendant.

## III

### IN RECALCULATING PENSION AMOUNTS, SHOULD THE ITEMS OF SHIFT DIFFERENTIAL PAY AND LONGEVITY PAY BE TAKEN INTO ACCOUNT AS OF THE TIME EACH BENEFIT BECAME AVAILABLE TO ACTIVE MEMBERS, AND SHOULD INTEREST BE AWARDED?

The pensions should be recalculated taking into acount the fringe benefit items of shift differential pay and longevity pay from the time each of those items became available to active members. The amounts due to plaintiffs should be reduced by the amounts they would have been required to contribute to the retirement system taking into account longevity pay and shift differential pay. Judgment interest under MCL 600.6013; MSA 27A.6013 should be awarded on the net increase in pension amounts due to plaintiffs.

## IV

### ARE THE 39 PLAINTIFFS IN THIS CASE WHO ERRONEOUSLY RECEIVED MONIES AS THE RESULT OF A CONSENT JUDGMENT ENTERED IN PRIOR PENSION LITIGATION INVOLVING PRE-1969 RETIREES FORECLOSED FROM OBTAINING JUDGMENT IN THE PRESENT CASE?

A class action suit was commenced in 1971 seeking increased pension benefits for pre-1969 retirees. That suit concerned different charter provisions dealing only with pre-1969 retirees. A consent judgment was entered in that case in 1972. It appears that a supplemental judgment entered July 9, 1973, erroneously included 39 post-1968

retirees who are also plaintiffs in the present action. It is undisputed that a payment was made to these 39 members in 1973 pursuant to the supplemental judgment. The 1973 payment is the only payment in issue. Defendants' counterclaim sought return of the monies erroneously paid.

Defendants contend that a judgment of no cause of action should be entered against these 39 members because they failed to return the excess payment in 1973. We disagree, and find that defendants are entitled only to a set-off of the pertinent amount against the recoveries of the 39 plaintiffs.

The trial court's February 8, 1983, judgment is reversed and the case is remanded for entry of a judgment awarding pension benefits and interest consistent with this opinion.

Reversed and remanded.