GENTILE v CITY OF DETROIT

YANK v CITY OF DETROIT

Docket Nos. 71630, 71631. Submitted June 7, 1984, at Detroit.—Decided December 17, 1984. Leave to appeal applied for.

Harold Gentile and other retired firemen of the City of Detroit and their beneficiaries in one lawsuit and Anthony Yank and other retired policemen of the City of Detroit and their beneficiaries in another lawsuit filed separate actions for mandamus against the City of Detroit in Wayne Circuit Court to require their retirement systems to include the value of fringe benefits paid by the City of Detroit to its present employees in the determination of the pensions the retirees and beneficiaries now receive. The Detroit Fire Fighters Association intervened as a party plaintiff. The actions were consolidated for trial. The court, Robert J. Colombo, J., ordered that longevity pay, holiday pay and vacation pay, leave time, overtime, shift differential, cost of living adjustment, food allowance, and hospitalization and medical and dental insurance, if not already paid through the medical plan of the City of Detroit on behalf of the pensioner, be included in the computation of pensions. Optical care, excuse time, personal leave days, recall pay, sick leave, bonus vacation days, life insurance, death benefits, funeral leave days, emergency days and any other fringe benefits not enumerated in the order were not to be included in the computation of pensions. The court further held that plaintiffs' claim

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 195.

60 Am Jur 2d, Pensions and Retirement Funds §§ 4, 41.

73 Am Jur 2d, Statutes § 206.

[2] 2 Am Jur 2d, Administrative Law § 241 *et seq.*

Supreme Court's view as to weight and effect to be given, on subsequent judicial construction, to prior administrative construction of statute. 39 L Ed 2d 942.

[3] 60 Am Jur 2d, Pensions and Retirement Funds § 56.

63 Am Jur 2d, Public Officers and Employees § 481 *et seq.*

[4] 52 Am Jur 2d, Mandamus §§ 63, 64.

[5] 5 Am Jur 2d, Appeal and Error § 870.

52 Am Jur 2d, Mandamus § 494.

for inclusion of the value of accrued overtime, accrued vacation, and accrued sick leave days should not be included in determining plaintiffs' pension payments and that the determination of pension rights was to be made retroactive to six years before the commencement of the respective lawsuits. Plaintiffs appeal from the exclusion of those items excluded from the computation and defendants appeal from the inclusion of any fringe benefits whatsoever. The appeals have been consolidated. *Held:*

1. There are two classes of retirees, one class being comprised of those who retired prior to July 1, 1941, and covered by one city charter provision and the second class being comprised of those who retired after July 1, 1941, and covered under another city charter provision. The pension payments for the members of the first group are to be calculated at the rate of one-half of the pay of the rank in which such member was serving at the time of retirement. The amount of the second group's pension payments is to be based on the average final compensation of the retiree prior to retirement. Thus the key words are "pay" and "compensation".

2. The fact that demands were made for the inclusion of fringe benefits in the computation of pensions during collective bargaining by the unions does not foreclose plaintiffs from bringing these actions since no provisions were agreed upon and, as retirees, plaintiffs were not represented directly during the collective bargaining sessions. No contract spells out the definition of "rate of pay" or "compensation" as those terms apply to pensions.

3. Since neither "pay" nor "compensation" is defined in the contracts between the city and the unions representing the firemen and policemen nor in the city charter and the dictionary definitions of those terms do not answer the question of what is to be included in determining what is pay or compensation as those terms are used in the charter, the "rule of common understanding" should be applied. Under that rule, it is left to what reasonable minds, the great mass of the people, would believe was meant by "pay" and "compensation" when considering pension rights.

4. Based upon what reasonable minds would find the words "pay" and "compensation" to mean in the context in which they are used in these cases, the trial court did not err by including longevity pay, holiday pay, vacation pay, leave time, overtime, shift differential, and cost of living adjustments in computing the pension payments and did not abuse its discretion in not including the value of optical care, excuse time,

recall pay, sick leave, bonus vacation days, life insurance, death benefits, funeral leave days, and emergency days in the computations. The court did, however, abuse its discretion by allowing food allowances and hospitalization and medical and dental insurance as a basis of computation of pensions and by disallowing personal leave days as a portion of that basis.

Remanded to the trial court for issuance of an order in compliance with the Court of Appeals opinion.

1. MUNICIPAL CORPORATIONS — CITY CHARTERS — PENSIONS — UNDEFINED TERMS — JUDICIAL CONSTRUCTION — RULE OF COMMON UNDERSTANDING.

The "rule of common understanding" should be used in construing terms used in city charter provisions pertaining to pensions where those terms are not defined in the charter or labor contracts covering the employees involved and no other definitions are applicable; under the "rule of common understanding", terms are given interpretations which reasonable minds, the great mass of the people themselves, would give them.

2. ADMINISTRATIVE LAW — STATUTES — JUDICIAL CONSTRUCTION.

The principle that a long-standing interpretation of a statute by the agency which administers it is entitled to great weight does not control where the interpretation is clearly wrong.

3. LABOR RELATIONS — PENSIONS — COMPENSATION — ACCRUED OVERTIME, VACATION AND SICK LEAVE.

Accrued overtime, vacation, and sick leave pay should not be considered part of "pay" or "compensation" for purposes of computing pension benefits based on annual salary or compensation since those payments are not made regularly during a worker's tenure but are viewed as a retirement bonus received at retirement.

4. MANDAMUS — CLEAR LEGAL RIGHT.

A plaintiff must have a clear legal right to the performance of the specific duty he seeks to compel by the issuance of a writ of mandamus against a public official.

5. APPEAL — MANDAMUS — ABUSE OF DISCRETION.

A trial court's decision in an action for mandamus should not be reversed unless it is clear that the court abused its discretion.

*Logan & Ashare* (by *Richard Ashare),* for Harold Gentile and Anthony Yank, *et al.*

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helve-*

*ston & Waldman, P.C.* (by *Theodore Sachs* and *Mark Brewer*), for Intervening Plaintiff, Appellee, and cross-appellant Detroit Fire Fighters Association.

*Mark Ulicny,* Deputy Corporation Counsel, *Frank W. Jackson,* Supervising Assistant Corporation Counsel, and *Stringari, Fritz, Kreger, Ahearn & Hunsinger, P.C.* (by *Brian S. Ahearn*), for City of Detroit.

Amicus Curiae:

*Gregory, Van Lopik, Moore & Jeakle* (by *Jeffrey J. Ellison* and *Mark L. Heinen*), for Detroit Police Officers Association.

Before: R. M. Maher, P.J., and Hood and R. B. Martin,* JJ.

R. B. Martin, J. Retired policemen and retired firemen of the City of Detroit brought separate actions to require their retirement systems to include fringe benefits paid by the city to its present employees in the determination of the pensions the retirees now recieve. After a careful perusal of the evidence the circuit court ordered the following fringe benefits to be included in the computation of pensions:

"(a) Longevity pay
"(b) Holiday pay and vacation pay
"(c) Leave time
"(d) Overtime
"(e) Shift differential
"(f) Cost of living adjustment
"(g) Food allowance

* Retired circuit judge, sitting on the Court of Appeals by assignment.

"(h) Hospitalization and medical and dental insurance, but not if already paid through the medical plan of the Defendant on behalf of any pensioner."

The court ordered that the following fringe benefits should not be included in the computation:

"(a) Optical care
"(b) Excuse time
"(c) Personal leave days
"(d) Recall pay
"(e) Sick leave
"(f) Bonus vacation days
"(g) Life insurance
"(h) Death benefit
"(i) Funeral leave days
"(j) Emergency days
"(k) Or any other fringe benefits not enumerated herein."

It further held that the plaintiffs' claim for inclusion of accrued overtime, accrued vacation, and accrued sick leave days should not be included in determining plaintiffs' pension payments. It ordered the determination of pension rights to be made retroactive to six years before the commencement of the respective lawsuits.

Plaintiffs appeal from the exclusion of those items excluded from the computation. The defendants appeal from the inclusion of any fringe benefits whatsoever. The parties can agree on many facts but disagree on the legal conclusions to be drawn therefrom.

The retirees are of two classes. The members of one group retired before July 1, 1941, and are covered by City Charter 1935, Title IV, Chapter XXI, Section 23. The members of the other group retired after July 1, 1941, and are governed by the

amended charter provisions Title IX, Chapter VII, Article 2, Sections 14 *et seq.*

The pertinent provision of Title IV provides:

"Any member who so retires shall be paid at the rate of one-half of the pay of the rank in which such member was serving at the time of retirement, and in the event of change at any time thereafter in said rate of pay, then at the rate of one-half the pay for said rank so changed."

It is clear the key language here is "rate of one-half the pay". What does it mean? Does it include the fringe benefits stated by the trial judge?

The pertinent part of Title IX provides for a pension based on the average final compensation. That would mean the annual rate of earnable compensation at the time of the member's termination from employment. Earnable compensation would mean the compensation as fixed by the city budget for the rank, grade or position of the member. There was the normal escalator clause also. For the group governed by these provisions the key language, of course, is "average final compensation" and "earnable compensation". What does this language mean? Does it include the fringe benefits stated by the trial court?

Historically the retirement program was commenced in years gone by before there were such things as fringe benefits. Over the years fringe benefits were added, and in increasing numbers after public employees could be and were unionized. Fringe benefits were commenced by at least 1935. The defendants have constantly excluded the value of fringe benefits in calculating benefits under the pension system and in calculating deductions from wages for the benefit of the pension system. Collective bargaining and arbitration have

not produced definitions for the words "rate of pay" or "compensation".

Are the plaintiffs foreclosed from suing because demands were made for the inclusion of fringe benefits during collective bargaining but no provisions were agreed upon?

We rule they are not. As retirees, the plaintiffs were not represented directly during the collective bargaining sessions. The union did attempt to get some language straightened around, but no bargained contract spells out the definition of "rate of pay" or "compensation" as it applies to pensions. Courts certainly should be an avenue for the plaintiffs to seek redress of their present complaint.

Should "pay" and "compensation" as used in the charter include the costs of fringe benefits? Here we are engulfed with a deluge of citations, none of which are exactly on all fours with our case.

The charter does not specifically include or exclude any fringe benefits by definition. The dictionaries really do not help us because Mr. Webster was not dreaming of anything as esoteric as hospital insurance or shift differential when he defined these words. Although the Supreme Court was dealing with constitutional questions when it decided *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971), we feel the standard for construing the language of the charter here should be the same.

"The primary rule is the rule of 'common understanding' described by Justice Cooley:

" 'A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.' "* (Emphasis in original.)

What would reasonable minds, the great mass of

the people, believe was meant by "pay" and "compensation" when considering pension rights?

Although our courts are not the great mass of people, they often reflect the general public's conception of what is just, fair, and right. What have our courts said?

In our case the defendant had excluded fringe benefits when considering pension rights since fringe benefits first came into existence. There were certainly a number of years where no legal or collective bargaining challenge was made to that concept. This should weigh heavily with this Court. *Magreta v Ambassador Steel Co,* 380 Mich 513; 158 NW2d 743 (1968). However, we judges, who because of overwork or other causes may predecease our spouses, are pleased with *Murphy v State of Michigan,* 418 Mich 341, 348; 343 NW2d 177 (1984), wherein the Court said:

"The principle that a long-standing interpretation of a statute by the agency which administers it is entitled to great weight does not control when the interpretation is clearly wrong. *Schuhknecht v State Plumbing Board,* 277 Mich 183, 186-187; 269 NW 136 (1936)."

*Banish v City of Hamtramck,* 9 Mich App 381; 157 NW2d 445 (1968), has been cited and argued at great lengths by counsel on each side. We believe it is a case involving a particular circumstance and is not comparable to ours. There the retirees were beneficiaries of an escalator clause giving them pensions equal to one-half of the rate of pay being paid employees of their rank. In 1959-60 Hamtramck fell on hard financial times. When the pay for firemen and policemen was increased, it was specifically provided:

" 'that the basic pay of the Class B employees [the

plaintiffs were in this group] for all intents and purposes shall be the same as was prevailing in the 1958-1959 fiscal year and that any *amounts paid over and above such basic pay shall be construed as payments made only while in active service * * * and not constituting part of any salary upon which pension payments are to be computed and paid in the future.'* " (Emphasis in original.) 9 Mich App 385.

The pay raise was called "in service pay" and in later years the "hazard risk pay" was created solely to allow the city to increase the pay of employees without also increasing the cost of the retirees' pensions. We note that deductions were made for city and federal income taxes for in service and hazard risk, longevity and holiday pay.

Judge, now Justice, LEVIN rightfully found the new classifications of pay were created solely to protect the city's exchequer at the expense of the retirees. He did see the uniform allowance as simple reimbursement for out-of-pocket expenses and, therefore, not compensation. He allowed the new classifications of pay to be considered a portion of the compensation upon which the retirees' pensions were based.

There is absolutely nothing in our case that even hints that the City of Detroit created and paid any fringe benefits for the sole purpose of depriving retirees of what was justly theirs under the city charter pension provisions. The only part of *Banish* that is controlling in this case is the ruling on uniform allowances.

An Ohio court ruled that the fringe benefits of medical and hospital insurance premiums being paid were as valuable a perquisite of office as a weekly paycheck and were, therefore, part of "compensation" even if not a part of "salary". *State ex rel Parsons v Ferguson,* 46 Ohio St 2d 389; 348 NE2d 692 (1976). In that case a prose-

cutor whose compensation could not be changed during his term of office had been given hospital and medical insurance coverage and then had this coverage removed during that term of office. The discontinuance was permitted on other grounds but the court did find that it normally was part of his compensation protected by the constitution.

In *Kane v City of Flint,* 342 Mich 74; 69 NW2d 156 (1955), policemen and firemen sought equal pay for their classifications. They claimed they were being underpaid. The Court held that payments into their pension funds, the life insurance premium payments, and their allowance for uniforms were all compensation so that plaintiffs could not complain. The plaintiffs there, contrary to the position of the present plaintiffs, claimed that these fringe benefits were not a portion of their compensation.

We should take a long, hard look at *Hay v City of Highland Park,* 134 Mich App 624; 351 NW2d 622 (1984). There the city had an escalator clause in its pension system and had pensions based on "final average salary". "Final average salary" was defined in the city charter as the " 'average of the compensations, as fixed in the city budget for the fiscal year * * *' ". "Compensation" meant the "salary paid a member by the city for service rendered by him as a policeman or fireman". The designation of compensation then went on to say, "nor shall it include remuneration for overtime, clothing and equipment, and travel expense". 134 Mich App 628.

The plaintiffs sought to include holiday pay, callback pay, terminal leave pay, shift differential, and longevity pay, payment of hospital, eye care, and dental insurance in the computation of their "salary".

The Court cited numerous Michigan, Wisconsin,

Ohio, Indiana and Illinois cases where it was held that "salary" didn't include fringe benefits. The Court allowed only shift differential and longevity pay to be included in the computation of compensation and salary.

The charter speaks of compensation as fixed by the city budget. We would note that in the three annual budgets submitted to the trial court, the city in all its summaries divided the budget figures into "salary and wages" and "fringe benefits" which, added together, became "total cost of personnel services". This is some indication that the city budget process differentiated between compensation and fringe benefits.

With these cases for our background, and in remembering that we should look for what reasonable minds would find the words to actually mean in the context in which we are dealing, we peruse the trial court's opinion to see if there is obvious error necessitating reversal.

We have no difficulty with longevity pay, holiday pay, and vacation pay, leave time, overtime, shift differential and cost of living allowance. They are normal payments made regularly in the course of the plaintiffs' work for regular work done. Food allowance is reimbursement for out-of-pocket expense and would normally not be considered pay or compensation. Certainly no one thought Uncle Sam should have his cut of this as a part of the plaintiffs' income.

Hospitalization, medical and dental insurance should not be included. We feel that in common parlance these items are considered true "fringe benefits" and not a part of pay or compensation. Again, they are the types of benefits most believe should not be subject to income taxation as a portion of earned income.

Optical care, life insurance, death benefits, and

funeral leave days correspond to hospital and medical insurance. Personal leave days are synonymous to holiday and vacation pay and should be included in the computation. Excuse time, recall pay, sick leave, bonus vacation days and emergency leave days are similar to funeral leave days. They really are bonus benefits for unusual situations and are not normal remuneration for normal work. We feel the common understanding would be that they were something extra and not to be considered as pay or compensation for a basis for a pension system.

When we get to the question of what to do with accrued overtime, vacation, and sick leave pay, we have precedent to guide us. *Stover v Retirement Bd of the City of St Clair Shores Firemen & Police Pension System*, 78 Mich App 409, 412-413; 260 NW2d 112 (1977). There a retired policeman sued to have his pension partially based upon payments for accumulated and unused sick days and accumulated and unused vacation days paid for at his retirement. The Court very quickly denied this.

"Annual compensation received refers to that pay which is received by a member each year for work done that year. Annual compensation received includes base salary, longevity pay, shift differential pay, holiday pay and overtime pay because those payments are made and received annually for work done that year. Annual compensation received *does not include unused sick or vacation payments* because those payments are not made regularly during a worker's tenure with the city. Those payments are properly viewed as a retirement bonus received at retirement and not as annual compensation received during a certain number of years immediately preceding the member's retirement." (Emphasis in original.)

In *Michigan State Police Command Officers' Ass'n, Inc v Dep't of Public Safety,* 80 Mich App 278; 263

NW2d 47 (1977), the Court rejected a retired policeman's contention that his pension should have in its computation the accumulated unused sick pay he received at retirement. The key word in this pension plan was "salary". The Court thought salary was a periodic allowance made for regular work done. Sick leave was not payment for work at all. The Court also relied on the long-standing administrative practice excluding such payments in pension compensation citing *Magreta v Ambassador Steel, supra.*

In *Lansing Firefighters Ass'n v Bd of Trustees of the City of Lansing Policemen's & Firemen's Local 421 Retirement System,* 90 Mich App 441; 282 NW2d 346 (1979), the pensions were based on "final average compensation". The retiree wanted his lump-sum payment for accrued unused vacation to be included in the computation. The Court denied this request, citing both *Stover* and *Michigan State Police, supra.*

On the issue of accrued overtime, vacation, and sick leave pay we affirm based on the reasoning of the aforesaid court opinions. In addition, it should be noted that basically the charter tried to base pensions on what the employee was earning at the time of retirement. Lump-sum payments for accumulated fringe benefits are hardly what we consider current compensation for current work.

We conclude with the observation that these lawsuits were actions for mandamus. A plaintiff must have a clear legal right to the performance of the specific duty he seeks to compel by the issuance of such a writ against a public official. *Golonka v Dep't of Ed,* 106 Mich App 28; 308 NW2d 425 (1981). We should not reverse a trial court's decision in a mandamus case unless it is clear that the court abused its discretion. *Golonka,*

*supra; South Looking Glass Drainage Dist Bd v Grand Trunk Western R Co,* 357 Mich 215; 98 NW2d 543 (1959).

In reviewing the cases which throw some light on what the common, ordinary, everyday meaning of "pay" and "compensation" is when discussing pension bases, we can see no abuse of discretion in including longevity pay, holiday pay, vacation pay, leave time, overtime, shift differential, and cost of living adjustments. In the charter-provided basis of pension calculations, we would find no abuse of discretion in not allowing optical care, excuse time, recall pay, sick leave, bonus vacation days, life insurance, death benefits, funeral leave days, and emergency days.

We do find an abuse of discretion in allowing food allowances and hospitalization and medical and dental insurance as a portion of the basis of computation of pensions. We find an abuse of discretion for disallowing personal leave days as a portion of that basis.

The matter will be remanded to the trial court for issuance of an order in compliance with this opinion.