EGAN v CITY OF DETROIT

Docket No. 80489. Submitted January 15, 1986, at Detroit.—Decided March 18, 1986.

Plaintiff, Stuart Egan, an employee of defendant, City of Detroit, was discharged. He, as a veteran, demanded a hearing under the veteran's preference act. A hearing was held and the hearing officer submitted a report to the mayor. The mayor issued a determination sustaining his discharge. Plaintiff brought an action for superintending control against the city in the Wayne Circuit Court. The court found that the hearing officer's report did not contain adequate findings of fact and that the mayor had not personally reviewed the record of the hearing. The court, Thomas J. Foley, J., ordered plaintiff reinstated with back pay and benefits. Defendant appealed and plaintiff cross-appealed. *Held:*

1. The court did not exceed its scope of review in finding that the procedures prescribed by statute were not followed and that, as a result, plaintiff was denied due process.

2. The court did not err in deeming certain requests for admissions propounded by plaintiff to defendant to have been admitted.

3. The court did not make specific findings as to what was included in the award of back benefits. Only those benefits which would be subject to income taxation as a portion of earned income should be considered as part of a worker's "compensation" under the veteran's preference act.

4. The court erred in awarding a sum for social security contributions allegedly lost.

5. The court did not err in reducing the award to plaintiff by the sum he earned through private consulting work.

6. Plaintiff's award should have reflected any automatic

REFERENCES
Am Jur 2d, Public Officers and Employees §§ 8, 256, 288, 540, 631.
Am Jur 2d, Veterans §§ 122-141.
See the annotations in the ALR3d/4th Quick Index under Armed Forces; Public Officers and Employees; Veterans.

salary increases he would have received had he remained employed.

7. The court did not abuse its discretion in refusing to award costs and attorney fees.

Affirmed in part, reversed in part, and remanded.

1. Armed Services — Public Employees — Veteran's Preference Act — Due Process.

A court does not exceed its scope of review in finding a denial of due process to a veteran who was a city employee and whose discharge was upheld by the mayor where the employee requested a hearing pursuant to the veteran's preference act, the city law department's report to the mayor did not contain adequate findings of fact, and the record indicated that the mayor did not personally review the transcript of the hearing prior to making his decision (MCL 35.401 *et seq.;* MSA 4.1221 *et seq.*).

2. Armed Services — Public Employees — Veteran's Preference Act — Compensation.

Only those benefits which would be subject to income taxation as a portion of earned income should be considered as part of a worker's "compensation" under the veteran's preference act; neither health care insurance nor social security contributions should be considered as part of the worker's compensation under the act.

3. Armed Services — Public Employees — Veteran's Preference Act.

An improperly dismissed worker's award of damages under the veteran's preference act should be reduced by any compensation earned by the worker during the dismissal period (MCL 35.401 *et seq.;* MSA 4.1221 *et seq.*).

4. Armed Services — Public Employees — Veteran's Preference Act — Damages.

An award of damages under the veteran's preference act should reflect any automatic pay raises the worker would have received had he been working (MCL 35.401 *et seq.;* MSA 4.1221 *et seq.*).

*John A. Stevens,* for plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L.*

*Walters* and *Christopher E. Mast,* Assistants Corporation Counsel, for defendant.

Before: HOOD, P.J., and J. H. GILLIS and J. M. BATZER,* JJ.

PER CURIAM. Defendant, City of Detroit, appeals as of right from a circuit court decision to grant plaintiff Stuart Egan's motion for summary judgment on his petition for superintending control. Through the petition, plaintiff alleged certain deficiencies in the veteran's preference act discharge procedures followed by the city. MCL 35.401 *et seq.;* MSA 4.1221 *et seq.* Plaintiff, a senior computer systems analyst with the city, was discharged on May 24, 1976, for "official misconduct, habitual, serious or wilful neglect in the performance of duty and incompetency". As an honorably discharged veteran, plaintiff demanded a hearing under the veteran's preference act (VPA).

Pursuant to the act, Mayor Coleman Young referred the matter to Alfred Sawaya, supervising assistant corporation counsel with the city law department, for a fact-finding hearing. Hearings were conducted from July 28, 1976, through January 31, 1978, when closing arguments were presented. The city submitted its post-hearing brief on May 3, 1978, but a reply brief was not filed until September 22, 1978. This was apparently due to some concern as to whether Mr. Sawaya would disqualify himself after he allegedly remarked to plaintiff that he would be unable to submit a fair and unbiased report to the mayor. The hearing officer did not submit his report to the mayor until June, 1981, almost three years later. On July 6, 1981, plaintiff filed a circuit court petition for mandamus and injunctive relief, reinstatement

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

and damages. Only then did the city inform plaintiff that the hearing report had been submitted to the mayor June 24, 1981.

When plaintiff sought to obtain a copy of the hearing report, the city refused to produce it until ordered to do so by the circuit court on December 18, 1981. The city, arguing that the report was irrelevant and privileged, unsuccessfully sought an interlocutory appeal to this Court. Plaintiff ultimately received a copy of the Sawaya report in May, 1982. In the interim, on December 4, 1981, the mayor issued his determination sustaining the discharge. On December 16, 1981, plaintiff filed his petition for superintending control with the circuit court.

Alleging that the hearing officer's report contained no findings of fact, plaintiff moved for summary judgment and a hearing was held on March 25, 1983. Although the trial court agreed that there were no factual findings in the Sawaya report, he initially denied summary judgment on the assumption that the mayor had complied with the procedures set forth in the statute. Plaintiff then filed three requests for admissions with the city seeking to discover whether the mayor had read the hearing transcripts. When the city failed to respond to these discovery requests, plaintiff renewed his summary judgment motion, and the trial court, concluding that the matters in the request for admissions must be deemed admitted, ruled that, since the hearing examiner's report was inadequate and the mayor did not personally review the transcripts, plaintiff had been denied his right of due process. Defendant's first two claims on appeal arise from this order.

On January 6, 1984, the circuit court entered an order for reinstatement of plaintiff and he returned to work shortly thereafter. An order and

modified order to correct a mathematical mistake in his back pay and benefits award were entered on August 24, 1984, and September 7, 1984. Defendant's third claim of error concerns this order. Plaintiff has cross-appealed from this order claiming that he has not been made whole by the back pay and benefits awards.

The threshold issue in this case concerns the Michigan veteran's preference act, and specifically § 402, which outlines the hearing procedures under the act. Section 402 states, in relevant part:

"No veteran or other soldier, sailor, marine, nurse or member of women's auxiliaries as indicated in the preceding section holding an office or employment in any public department or public works of the state or any county, city or township or village of the state, * * * shall be removed or suspended, * * * from such office or employment except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency; and such veteran shall not be removed, transferred or suspended for any cause above enumerated from any office or employment, except after a full hearing * * * before the mayor of any city * * * and at such hearing the veteran shall have the right to be present and be represented by counsel and defend himself against such charges: * * * Provided, however, That where such veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty under the provisions of this act it is to make the removal, transfer, or suspension, within 30 days from the day such veteran is removed, transferred, or suspended; otherwise the veteran shall be deemed to have waived the benefits and privileges of this act: Provided, however, Said hearing shall be held within 30 days of filing such notice: Provided further, That the mayor of any city * * * may refer any protest where a veteran is removed, transferred, suspended or discharged, to the legal department of such city or village for a hearing.

The legal department shall act as a fact finding body and shall have the power to examine witnesses, administer oaths and do all those things which the mayor could do hereunder: Provided further, That the findings shall be transmitted to the mayor in writing by the legal department, whereupon the mayor shall examine the transcript of the hearing and make a decision based on the transcript thereof * * *." MCL 35.422; MSA 4.1222.

As noted above, Hearing Officer Sawaya reported the results of plaintiff's VPA hearing to Mayor Young in a letter dated June 24, 1981. By letter dated December 4, 1981, Mayor Young upheld plaintiff's 1976 discharge. Plaintiff then filed a petition for superintending control alleging numerous deficiencies in the city's discharge procedures. At a hearing held March 25, 1983, plaintiff argued that the hearing officer's report was in total noncompliance with the statutory language requiring that the hearing officer make findings of fact. Plaintiff suggested that, with such a deficient report, the mayor could not have used the report to facilitate his review of the transcript as is required under the VPA. While agreeing with plaintiff's characterization of the hearing report as totally inadequate, the trial court concluded that summary judgment was not appropriate since the mayor might have based his decision upon his own review of the transcripts without relying upon the inadequate report.

Subsequently, however, plaintiff posed three requests for admissions to the city in an attempt to discover whether Mayor Young had in fact personally reviewed the hearing transcripts. When no response was received from the city, plaintiff renewed his summary judgment motion. In an opinion dated December 12, 1983, the trial court indicated that, due to the city's failure to respond to

the request for admissions, it must be concluded that the mayor did not personally examine the transcript. Thus, plaintiff's summary judgment motion alleging a deprivation of due process hinged upon the sufficiency of the findings of fact made by the hearing examiner. Since these findings were clearly inadequate under the act, the court found that plaintiff's due process rights had been denied.

On appeal, defendant first attacks this finding by arguing that the trial court exceeded the scope of review, which defendant claims is limited to determining whether plaintiff's discharge was supported by competent, material and substantial evidence on the whole record. We agree with defendant that, where the procedures outlined in the act are followed and a proper decision is rendered by the mayor, the circuit court review of that decision is limited to the review function claimed by the defendant. *DeGraaf v City of Allegan,* 91 Mich App 266, 270-271; 283 NW2d 719 (1979). However, a preliminary issue was presented to the trial court in the instant case, *i.e.,* whether the procedures outlined in § 402 were violated by the defendant. As noted earlier, § 402 provides that, where such matters as these are referred to the city law department, the findings of fact made by the department "shall be transmitted to the mayor in writing * * *, whereupon the mayor shall examine the transcript of the hearing and make a decision based on the transcript thereof * * *". If, as found by the trial court here, the law department failed to submit fact-findings to the mayor and the mayor did not examine the hearing transcripts, the mayor's decision could not have been based upon competent, material and substantial evidence in the record.

The essence of defendant's argument is that so

long as the record contains sufficient evidence it is not relevant whether the mayor's decision resulted from an examination of the record and consideration of the evidence. Aside from the fact that such a proposition ignores the explicit requirements of the statute, the implication is that the circuit court should be expected to undertake a review of the transcripts, which in the present case totalled over 1,100 pages, in order to extricate testimony therefrom which would justify the mayor's decision. We reject this notion and conclude that the trial court did not exceed the scope of its review when it found that plaintiff's due process rights were denied as a result of the defendant's violation of the procedures set forth in the VPA.

The next issue concerns the trial court's conclusion that, by failing to respond to the plaintiff's request for admissions, defendant should be deemed to have admitted the allegations contained therein. The request sought the following information:

"1. Admit that COLEMAN YOUNG, Mayor of the CITY OF DETROIT, in his official capacity did not personally review each and every page of the transcript of the Veteran's Preference Hearing of STUART EGAN conducted between July 1976 and January 1978, prior to the Mayor's December 4, 1981 written determination in this action.

"2. Admit that COLEMAN YOUNG, Mayor of the CITY OF DETROIT, in his official capacity did not personally inspect and review each and every exhibit numbered and admitted and incorporated as part of the record of the Veteran's Preference Hearing of STUART EGAN, conducted between July 1976 and January 1978, prior to the Mayor's written determination in this action on December 4, 1981.

"3. Admit that any review of the above transcripts, exhibits and/or records was done by a member or

members of the administrative staff of the Mayor of the CITY OF DETROIT."

Defendant argues that the request for admissions was an improper inquiry into the mental or decision making processes of the mayor, citing *Great Lakes Steel Division of National Steel Corp v Michigan Public Service Comm,* 130 Mich App 470; 344 NW2d 321 (1983). We disagree since we believe that *Great Lakes* is easily distinguishable. For example, the plaintiffs in that case requested "any document, note, memorandum, letter or similar writing, however characterized, which was *in any way relied upon or referred to by either member of the majority*" of the Michigan Public Service Commission. *Great Lakes, supra,* p 490. (Emphasis in original.) In contrast, the request at issue here was not concerned with the mayor's mental process, but rather was designed only to discover an objective fact, *i.e.,* whether the mayor actually examined the hearing transcripts before rendering his decision, as required by the statute.

Furthermore, we believe that plaintiff's request for admissions could be justified under either of the two exceptions to the "thought process rule". *Great Lakes, supra,* p 491. The entirely unreasonable length of time which transpired between plaintiff's request for hearing under the VPA and the mayor's issuance of a decision upholding the dismissal provides significant indicia of a demonstration of "bad faith or improper behavior" on behalf of the decision makers. Further, the second exception, *i.e.,* "where the administrative record is inadequate to explain the action taken", *Great Lakes, supra,* p 491, seems designed specifically for the situation presented here. Defendant does not seriously dispute that the hearing report is bereft of factual findings, and the mayor's letter uphold-

ing the dismissal set forth the actual grounds in generic terms, *i.e.,* "official misconduct, habitual, serious and wilful neglect of duty". We conclude that the trial court did not err in presuming the accuracy of the information contained in plaintiff's request for admissions.

The next issue to be addressed concerns the damage award rendered in this case. In addition to an award of $132,495.26 representing back pay for the period from plaintiff's dismissal in June, 1976, until his reinstatement on January 12, 1984, the trial court awarded $17,887.15 for the cost of fringe benefits lost during the period and social security benefits differential in the amount of $9,182.52. The defendant now argues that the latter two awards were an abuse of the trial court's discretion since they are not authorized under the VPA. The applicable section of the act, MCL 35.402; MSA 4.1222, provides in pertinent part:

"That where such veteran has been reinstated to his employment * * * then such veteran shall be entitled to receive compensation for the time lost from date of such dismissal or suspension to the date of reinstatement at the same rate of pay received by him at the date of dismissal or suspension."

Defendant argues that, since the statute language does not refer to fringe benefits and since the reported cases on damages under the VPA do not specifically allow the recovery of such fringe benefits, these monetary awards must be reversed. In short, defendant's position is that the statutory term "compensation" must be narrowly defined and thus limited solely to the rate of pay at the time of dismissal.

While defendant's position on this matter is entirely reasonable, we agree with the trial court

that the term "compensation" should not be construed so narrowly as to constitute no more than a synonym for "salary". Although not controlling because it did not involve a construction of the VPA, we believe this Court's opinion in *Gentile v City of Detroit,* 139 Mich App 608; 362 NW2d 848 (1984), offers guidance. In *Gentile,* this Court was asked to consider whether the terms "average final compensation" and "earned compensation", as used in the city charter, were intended to include various fringe benefits. In construing the terms, the Court borrowed Justice Cooley's rule of "common understanding", *i.e.,* that a term should be given the interpretation which "reasonable minds, the great mass of the people themselves, would give it". *Gentile, supra,* p 614 (emphasis changed), quoting from *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971). After perusing a variety of cases dealing with similar topics, the Court concluded that only those benefits which would be subject to income taxation as a portion of earned income should be considered a part of plaintiff's "compensation". The court treated the various disputed aspects of compensation as follows:

"We have no difficulty with longevity pay, holiday pay, and vacation pay, leave time, overtime, shift differential and cost of living allowance. They are normal payments made regularly in the course of the plaintiffs' work for regular work done. Food allowance is reimbursement for out-of-pocket expense and would normally not be considered pay or compensation. Certainly no one thought Uncle Sam should have his cut of this as part of the plaintiffs' income.

"Hospitalization, medical and dental insurance should not be included. We feel that in common parlance these items are considered true 'fringe benefits' and not a part of pay or compensation. Again, they are

the types of benefits most believe should not be subject
to income taxation as a portion of earned income.

"Optical care, life insurance, death benefits, and fu-
neral leave days correspond to hospital and medical
insurance. Personal leave days are synonymous to holi-
day and vacation pay and should be included in the
computation. Excuse time, recall pay, sick leave, bonus
vacation days and emergency leave days are similar to
funeral leave days. They really are bonus benefits for
unusual situations and are not normal remuneration
for normal work. We feel the common understanding
would be that they were something extra and not to be
considered as pay or compensation for a basis for a
pension system." 139 Mich App 618-619.

The Court also excluded accrued overtime, vaca-
tion and sick leave pay since such payments were
"not made regularly during a worker's tenure with
the city", 139 Mich App 619, quoting *Stover v
Retirement Bd of the City of St Clair Shores
Firemen & Police Pension System,* 78 Mich App
409, 412-413; 260 NW2d 112 (1977).

Again, although *Gentile* is not controlling here,
we believe the distinction used to define "compen-
sation" in that case offers a sensible approach to a
difficult question. Thus, we conclude that plaintiff
should receive as damages for the improper dis-
missal only those types of lost benefits which
would be subject to income taxation as a portion of
earned income. Unfortunately, the record here
does not clearly indicate specifically which benefits
were included by the trial court to make the
award of $17,887.15 to plaintiff. However, accord-
ing to the defendant, the trial court included such
items as Blue Cross/Blue Shield coverage. As
noted above, we do not believe such a benefit
should be included within the term "compensa-
tion" under the VPA. Since we are unable to
determine from the record before us the precise
makeup of the trial court's award of $17,887.15 in

fringe benefits, we remand this case for reconsideration of that award in light of the definition of the term "compensation" which we have adopted herein.

The trial court also awarded $9,182.52 for social security contributions allegedly lost during the period of dismissal. The exact method used to reach this figure is unclear, but was apparently based upon the extent to which plaitiff's social security benefits will be reduced due to the absence of contributions into the social security system on his behalf during the period of his dismissal. Utilizing the definition of compensation noted above, we have no difficulty concluding that plaintiff should not have received an award of damages on this basis. Any contribution into the social security system which would have been made by the defendant on plaintiff's behalf could not, to reasonable minds, be considered compensation to the plaintiff. These contributions are made only by mandate of a federal law which was designed to promote overall societal interests rather than to provide additional compensation to this plaintiff. We have no doubt that, in the absence of these federal laws, plaintiff's compensation package would not be increased proportionately to make up the differential. In short, we do not believe that the Legislature intended such an award to be included as damages under the veteran's preference act.

In his cross-appeal, plaintiff complains that the trial court erred in reducing the amount of his award by the sum of money he earned through private consulting work. Plaintiff relies upon *Cremer v Alger County Road Comm'rs*, 325 Mich 27; 37 NW2d 699 (1949), where the Court dealt with a similar issue as follows:

"There is no merit to defendant's further contention: 'If plaintiff was wrongfully discharged, his recovery should be reduced by the amount he could earn at general labor for the defendant.' The reason defendant urges in support of this contention is that it was plaintiff's 'duty to mitigate the damages by taking other employment.' The answer is that the statute, which is class legislation favoring honorably discharged veterans, in part reads:

" 'And *provided further,* That where such veteran has been reinstated to his employment upon the written order of the * * * prosecuting attorney if a county employee, * * * then such veteran shall be entitled to receive compensation for the time lost from date of such dismissal or suspension to the date of reinstatement at the same rate of pay received by him at the date of dismissal or suspension.'

"While it fairly appears that plaintiff declined to return to defendant's employ as a common laborer, he testified he sought employment elsewhere and stated to one to whom he was applying: 'I would try anything.' " 325 Mich 34.

Even assuming that, pursuant to *Cremer,* a plaintiff's failure to mitigate his damages by obtaining like employment cannot be relied upon to reduce his award under the veteran's preference act, we believe this proposition does not prevent a reduction of the monetary award where plaintiff has in fact had earnings during the period of dismissal. If we were to accept plaintiff's argument, a veteran who has obtained interim employment at a higher wage during the entire dismissal period would nonetheless be entitled to full back pay for the period. We cannot believe the Legislature intended to bestow such a windfall since damages are generally designed to compensate for harm done. In the scenario suggested above, the improperly dismissed veteran has suffered no harm, at least financially, and thus, while entitled to reinstatement to his former position, he should not receive an award

for back pay. Therefore, we conclude that the trial court properly reduced plaintiff's award by the amount of income earned by plaintiff during the period of his dismissal from city employment.

However, we do find merit to plaintiff's argument that his award of back pay should have included automatic salary increases to which he would have been entitled had he not been dismissed by the defendant. Although the VPA provides only for compensation "at the same rate of pay received by him at the date of dismissal", we believe the Legislature intended any award to include automatic, as opposed to merit, pay increases which the employee would have received. On remand, the trial court should therefore include such pay increases in recalculating the award.

Plaintiff also contends that the trial court abused its discretion in refusing to award him costs and attorney fees pursuant to GCR 1963, 111.6. Our review of the record reveals no such abuse. *Minor v Michigan Education Ass'n,* 127 Mich App 196; 338 NW2d 913 (1983).

Affirmed in part and reversed in part. Remanded for proceedings not inconsistent with this opinion.