*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW POTTER,

        Plaintiff-Appellee/Cross-Appellant,

v

CITY OF HARBOR SPRINGS, VICTOR
SINADINOSKI, and MATT BUGERA,

        Defendants-Appellants/Cross-
        Appellees.

UNPUBLISHED
February 11, 2025
10:03 AM

No. 363718
Emmet Circuit Court
LC No. 21-107342-CD

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

In this interlocutory appeal in a dispute involving the alleged wrongful termination of plaintiff's employment with defendant City of Harbor Springs (the city), defendants appeal by leave granted[1] the circuit court's rulings denying in part defendants' motion for summary disposition. Plaintiff also filed a cross appeal. For the reasons set forth in this opinion, we vacate the circuit court's orders as explained in further detail below and remand to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

This employment dispute involves claims under the Veterans Preference Act (VPA), MCL 35.401 *et seq*., and the and Whistleblower's Protection Act (WPA), MCL 15.361, *et seq*., arising out of events that occurred on March 31 and April 1, 2021.

The parties do not dispute that plaintiff is an honorably discharged veteran of the United States Air Force. Plaintiff was hired by the city in 2018 as assistant to the city manager. When

---

[1] *Potter v City of Harbor Springs*, unpublished order of the Court of Appeals, entered June 7, 2023 (Docket No. 363718).

plaintiff was originally hired for this position, Tom Richards was the city manager. Victor Sinadinoski became the city manager on May 1, 2019.

On March 31, 2021, Sinadinoski and plaintiff discussed potential plans for the Chamber of Commerce to relocate to a city owned building in Ford Park. Plaintiff was apparently personally opposed to this plan. According to Sinadinoski, he asked plaintiff for a list of reasons why plaintiff opposed the plan. Plaintiff testified that he was asked to conduct a "feasibility study" and to create a "pros and cons report" with respect to the Chamber of Commerce moving into the vacant building at Ford Park.

Plaintiff, after confirming that there was a "State of Michigan Land and Water Conservation Grant" placard on the Ford Park building, sent an e-mail to Merrie Carlock at the Michigan Department of Natural Resources (DNR). In this e-mail, plaintiff asked Carlock whether leasing the building to the Chamber of Commerce would violate any conditions of the Land and Water Conservation agreement. Plaintiff also indicated in the e-mail that the city had recently allowed a commercial barge business, Walstrom Dock and Dredge, to operate from the public boat ramp in Ford Park. Carlock responded and explained that the proposed lease of the building to the Chamber of Commerce could be problematic in light of the history of Land and Water Conservation Fund grants for the site and the associated restrictions. She also asked for more details about the barge operation, and more e-mails were exchanged.

Later that day, plaintiff informed Sinadinoski about the e-mails with Carlock. Plaintiff told Sinadinoski that Carlock had indicated that the building could not be leased to the Chamber of Commerce and that Walstrom Dock and Dredge could no longer operate from Ford Park. Sinadinoski was surprised and upset. He told plaintiff to cease communications with Carlock and to forward the e-mails to him.

Sinadinoski concluded that plaintiff's emails contained false statements, inappropriate comments, improper disclosures of confidential information, and improper injections of plaintiff's "personal agenda." Sinadinoski decided that he would meet with plaintiff in an attempt to get plaintiff to "understand his duties and obligations as a city employee and how [Sinadinoski] would have liked him to handle the situation." Sinadinoski stated that he did not intend to terminate plaintiff's employment over the e-mails.

However, the next morning, April 1, Sinadinoski had a meeting with plaintiff, during which Sinadinoski verbally terminated plaintiff's employment. Plaintiff and Sinadinoski gave different descriptions of what transpired during that meeting. Sinadinoski claimed that he tried to talk to plaintiff about how the situation regarding the use of the park and the e-mails with Carlock should have been handled differently and that plaintiff became argumentative, raised his voice, and would not listen to Sinadinoski or let him speak. Plaintiff claimed that Sinadinoski was the person who was yelling and raising his voice, and plaintiff stated that he remained calm through the interaction. Plaintiff further claimed that Sinadinoski consistently interrupted him and would not let him finish his answers to Sinadinoski's questions. According to plaintiff, Sinadinoski jumped up from his chair and "punched the desk . . . in a fit of rage." Sinadinoski characterized this incident as a "slap [on] the desk space near [his] keyboard to get [plaintiff's] attention, like a judge or mayor hitting a gavel on the desk to get order in the room."

The meeting ended with Sinadinoski verbally terminating plaintiff's employment. The termination was memorialized in a letter issued the same day. The letter stated in pertinent part: "This letter is to inform you that your employment with the City of Harbor Springs has been terminated effective immediately due to unsatisfactory performance and conduct."

On April 30, 2021, plaintiff sent an email to the city clerk and city attorney stating that because he was an honorably discharged veteran of the United States military, he was entitled under the VPA to a hearing before his employment could be terminated. Plaintiff further stated that Sinadinoski's termination of plaintiff's employment violated plaintiff's rights under the VPA and that the present communication constituted his official notice to the city.

At issue is MCL 35.402, which provides as follows:

> *No veteran* or other soldier, sailor, marine, nurse or member of women's auxiliaries as indicated in the preceding section *holding an office or employment in any public department* or public works of the state or any county, city or township or village of the state, *except* heads of departments, members of commissions, and boards and heads of institutions appointed by the governor and officers appointed directly by the mayor of a city under the provisions of a charter, *and first deputies* of such heads of departments, heads of institutions and officers, *shall be removed* or suspended, or shall, without his consent, be transferred from such office or *employment except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency*; *and such veteran shall not be removed*, transferred or suspended *for any cause above enumerated from any office or employment, except after a full hearing* before the governor of the state if a state employee, or before the prosecuting attorney if a county employee, or before the mayor of any city or the president of any village, or before the commission of any such city or village operating under a commission form of government, if an employee of a city or village, or before the township board if a township employee, and at such hearing the veteran shall have the right to be present and be represented by counsel and defend himself against such charges: Provided further, That as a condition precedent to the removal, transfer, or suspension of such veteran, he shall be entitled to a notice in writing stating the cause or causes of removal, transfer, or suspension at least 15 days prior to the hearing above provided for, and such removal, suspension or transfer shall be made only upon written order of the governor, the prosecuting attorney, the mayor, commission, or the township board: *Provided, however, That where such veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty under the provisions of this act it is to make the removal, transfer, or suspension, within 30 days from the day such veteran is removed, transferred, or suspended*; otherwise the veteran shall be deemed to have waived the benefits and privileges of this act: Provided, however, Said hearing shall be held within 30 days of filing such notice: *Provided further, That the mayor of any city or the president of any village or the commission of any such city or village operating under a commission form of government may refer any protest where a veteran is removed, transferred, suspended or discharged, to the legal*

-3-

*department of such city or village for a hearing. The legal department shall act as a fact finding body and shall have the power to examine witnesses, administer oaths and do all those things which the mayor could do hereunder: Provided further, That the findings shall be transmitted to the mayor in writing by the legal department, whereupon the mayor shall examine the transcript of the hearing and make a decision based on the transcript thereof: And provided further, That where such veteran has been reinstated to his employment upon the written order of the governor of the state if a state employee, the prosecuting attorney if a county employee, the mayor of any city or the president of any village or the commission of any such city or village operating under a commission form of government, or a township board if a township employee, or by an order of any court of competent jurisdiction, then such veteran shall be entitled to receive compensation for the time lost from date of such dismissal or suspension to the date of reinstatement at the same rate of pay received by him at the date of dismissal or suspension.* [Emphasis added.]*

Matt Bugera, the city's mayor, communicated with plaintiff in a letter dated May 11, 2021. In this correspondence, Bugera affirmed plaintiff's request for a hearing under the VPA. However, he decisively clarified that the VPA does "not apply to heads of departments and first deputies of such department heads." Moreover, Bugera confirmed that the city had determined plaintiff held the role of "first deputy" to the city manager based on the clear responsibilities associated with the assistant to the city manager position. Despite this classification, Bugera made it clear that the city would grant plaintiff a hearing. He further explained that the city attorney had recused himself from the VPA hearing, leading Bugera to appoint attorney Michal Bogren as a special assistant city attorney to conduct the hearing, act as finder of fact, and report his findings to Bugera for a final decision.

Bogren conducted a hearing, during which both Sinadinoski and plaintiff provided their testimonies. Each presented a detailed account of the events leading to plaintiff's termination, as previously outlined. Sinadinoski stated emphatically that he had "entrusted [plaintiff] with highly important and sensitive issues" during plaintiff's tenure. He also confirmed that he had previously counseled plaintiff against engaging in political advocacy during work hours. Plaintiff unequivocally denied any prior disciplinary history but acknowledged his failure to prepare the required written pros and cons report that Sinadinoski had requested. Sinadinoski then articulated the reasoning behind his decision to terminate plaintiff's employment:

> I would say that Mr. Potter's behavior and insubordination in my office on that morning of April 1st was a tipping point in my decision to terminate him from his employment with the City. His inappropriate e-mail on March 31st combined with other instances ultimately demonstrates to me his poor performance and conduct was unsatisfactory. When he refused to listen to me or respect me and my reasonable request, I realized insubordinate employee with a track record of unsatisfactory behavior and conduct would no longer be benefit [sic] for the City as he could not be trusted to faithfully and honestly execute his duties for the City.

Plaintiff testified that the document delineating the duties of the assistant to the city manager, which was provided to both Bogren and plaintiff, accurately represented his job responsibilities. These duties included the obligation to "[r]epresent the City Manager in the

-4-

absence of the City Manager." However, plaintiff acknowledged that he "did not perform all of those duties" and "likely completed less than half of them." He also indicated that he had "drafted several grants for the City and investigated multiple grants for the City," which facilitated his acquaintance with Carlock.

Subsequent to the hearing, Bogren prepared written findings of fact. He described additional evidence presented by the parties, which he considered in reaching his conclusions. This evidence was appended as exhibits to the findings and included a statement from Richards, the former city manager, a statement from Patty Sutton, the city clerk, the job description for the assistant to the city manager position, plaintiff's written statement, and various other documents submitted by the city.

In his statement, Richards expressed his belief that the position for which plaintiff was hired did not encompass responsibilities adequate to qualify him as a "first deputy." Richards contradicted the assertion made in Bugera's letter and characterized plaintiff's role as that of an administrative assistant. According to Richards, the city council consistently designated the city clerk/treasurer as the substitute for the city manager when needed. In fact, the council had appointed the city clerk/treasurer as the acting city manager following Richards' retirement. Furthermore, Richards noted that plaintiff did not supervise any staff members and was not mandated to take an oath of office.

Sutton's statement provided in relevant part:

> On April l, 2021 Andy went into Victor's office and closed the door. I heard voices and just thought it was Andy talking as he tends to talk loud. Then I heard a bang, like someone smacking the desk which startled me. The next thing I know Andy comes out and said "Ladies, Victor just fired me[.] [D]o we have any boxes[?]"

Bogren specifically found that "The duties of the position Assistant to the City Manager at the City of Harbor Springs are reflected in [the attached job description], although Mr. Potter did not perform all of those duties"; "Mr. Sinadinoski was dissatisfied with Mr. Potter's performance in executing the charge to prepare a list of 'pros and cons' of the Chamber's proposal to lease the Ford Park Building"; "Mr, Sinadinoski was specifically dissatisfied that Mr. Potter inserted his personal views of the Chamber's proposal into his communications with Ms. Carlock and was more concerned with addressing his personal concerns than he was in carrying out his charge of preparing a list of 'pros and cons' of the Chamber's proposal"; "Mr. Potter's attitude toward Mr. Sinadinoski in the meeting on April 1, 2021 was combative and defiant"; "Mr. Potter was not amenable to receiving any criticism or counseling from Mr. Sinadinoski, his immediate supervisor, on April 1,2021"; "Both participants in the meeting were agitated and became angry"; "Based on the testimony of the participants in the meeting, Mr. Potter was dismissive of Mr. Sinadinoski's concerns about the manner in which Mr. Potter executed his charge of preparing a list of 'pros and cons' for the Chamber of Commerce's proposal"; "Mr. Potter did not fulfill his charge of preparing a list of 'pros and cons' for the Chamber's proposal"; "The April 1, 2021 meeting concluded by Mr. Sinadinoski informing Mr. Potter that his employment was terminated"; and "Mr. Sinadinoski prepared a letter dated April 1, 2021 addressed to Mr. Potter stating that Potter's employment was terminated 'due to unsatisfactory performance and conduct.' " In reaching these conclusions, Bogren noted:

Mr. Sinadinoski and Mr. Potter have conflicting recollections of what transpired in that meeting. Each testified the other participant was angry and yelling. The statement of the City Clerk, Patty Sutton, states that she heard "voices," and assumed it was Mr. Potter "as he tends to talk loud."

Bugera subsequently issued a written decision confirming termination of plaintiff's employment. Bugera stated his conclusions and reasoning in relevant part as follows:

> Based on the job duties described in Exhibit F to the Findings of Fact, the testimony of the City Manager and the testimony of Andrew Potter, Mr. Potter was the first deputy to the City Manager under the VPA. This is reinforced by the testimony and written statement of Mr. Potter that he contacted the State of Michigan as part of conducting a "feasibility study" of the Chamber of Commerce's proposal to lease the Ford Park Building. Mr. Potter further testified that he had written several grants for the City. The preparation of a "feasibility study" and writing grant proposals are significant responsibilities that require the exercise of discretion in order to carry out the policies established by the City Council. I do not find Mr. Tom Richards's opinion that Mr. Potter was "not in any way the 'First Deputy' of the City Manager" to be persuasive. Because Mr. Potter was the first deputy to the City Manager, he is not covered by the VPA and could be terminated as an at-will employee.

> However, even if it is assumed that Mr. Potter was not the first deputy of the City Manager, after reviewing the hearing transcript and the Findings of Fact with exhibits it is my decision that the termination of Andrew Potter's employment with the City of Harbor Springs is confirmed. Mr. Potter was terminated for behavior that constituted official misconduct and serious neglect in the performance of his duties. His interactions with his direct supervisor, City Manager Victor Sinadinoski, on April 1, 2021 were confrontational and disrespectful. Mr. Potter refused to accept any criticism or counseling from the City Manager. The City Manager attempted to explain to Mr. Potter why the City Manager was dissatisfied with Mr. Potter's performance of the charge to prepare a report or list of "pros and cons" for the Chamber of Commerce's proposal to lease the Ford Park Building. Regardless of whether Mr. Potter disagreed with the City Manager's criticism, his response to his direct supervisor constituted official misconduct and serious neglect in the performance of his duties.

Plaintiff filed a complaint in the circuit court on June 29, 2021, against the city, Sinadinoski, and Bugera. Plaintiff filed a first amended complaint against the same defendants on August 12, 2021. In his first amended complaint, plaintiff claimed that defendants had committed violations of the VPA and WPA, as well as breach of contract. Plaintiff alleged in Count 1 that defendants had violated the VPA by purporting to terminate his employment on April 1, 2021, before first providing plaintiff with formal written notice of the charges and a hearing. Plaintiff further alleged that the VPA protected him from being terminated from his employment unless it was for certain enumerated causes, of which there was no evidence in this case. In Count 2, plaintiff alleged that defendants violated the WPA by retaliating against him based on his reports of potential violations of law and other protected activities. Finally, plaintiff alleged in Count 3

that defendants had breached the parties' employment contract by failing to comply with defendants' obligations under the city's administrative hearing process as well as the VPA and WPA.

The parties filed competing motions for summary disposition. Following oral argument, the circuit court issued a written opinion. First, the circuit court denied the motion for summary disposition regarding the VPA claim. The court characterized plaintiff's claim as an alleged violation of due process premised on the failure to adhere to the requirements of the VPA and stated that plaintiff "does not seek an appeal of the final decision." The court concluded that plaintiff was not a "first deputy" outside the protections of the VPA based on the statements of Richard in his affidavit, which the circuit court found "credible," and the formal job description for the assistant to the city manager position. The circuit court further determined that summary disposition was not appropriate in favor of either party because "[t]he parties have differing accounts of what took place in the meeting and the basis for termination" and "in reviewing the evidence in a light most favorable to the non-moving party, there are facts by which reasonable minds could differ."

Regarding the WPA claim, the circuit court granted summary disposition in favor of defendants to the extent that the court concluded plaintiff's emails to Carlock did not constitute "protected activity" because they contained inaccurate information about the barge operation, there was no evidence that the barge operation violated any law, and the Chamber of Commerce had not actually moved into the city owned building. The circuit court therefore found that the e-mails "boil[ed] down to a request for information regarding the use of grant funds," which did "not rise to the level of 'reporting a suspected violation . . . of law.' " However, with respect to plaintiff's argument that his demands under the VPA also caused defendants to retaliate against him and discharge him, the court ruled: "A decision on this issue rests on the outcome of the VPA claim. Therefore, the Court will defer decision on this issue until the VPA claim is resolved."

Finally, the circuit court granted summary disposition in favor of defendants on the breach of contract claim. This ruling is not challenged on appeal and will not be discussed further. The circuit court subsequently entered an order memorializing the rulings in its written opinion.

Plaintiff moved for leave to amend his complaint to add federal constitutional claims, and both parties filed motions for reconsideration. On reconsideration, the circuit court affirmed its rulings on the VPA claim, but provided the following explanation of its reasoning:

> Plaintiff and Defendant both request Reconsideration. The Court has granted this request in order to provide additional clarity on the issues, however the Court's prior decision regarding summary disposition does not change.
>
> The VPA provides procedural requirements prior to terminating a veteran who falls within the purview of the Act. An aggrieved party can petition the Circuit Court for relief relating to their discipline or termination. If a party is entitled to protection under the VPA, due process requires adherence to the statutory requirements. . . . A party can also appeal the final administrative decision alleging that the termination decision was not supported by competent, material and substantial evidence on the whole record. . . .

In this case, Plaintiff alleges that Defendants violated his due process by failing to adhere to the requirements of the VPA. Plaintiff argues that there are genuine issues of material fact regarding whether the Defendants adhered to the procedural requirements or whether the process was a "sham." He does not seek an appeal of the final decision because he argues that the decision is essentially meaningless due to the due process violations.

Defendant first argues that the Court improperly found that Plaintiff was subject to the VPA. The underlying facts regarding whether the VPA applies to Plaintiff were not in dispute. Therefore, the Court properly determined that the VPA applied as a matter of law.

Defendant next argues that the Court used the wrong standard in denying his motion for summary disposition. Defendant argues that the Court should have used the "competent, material and substantial evidence" standard. However, that standard is used when reviewing the decision to terminate Plaintiff not when reviewing due process claims. Therefore it would have been error for the Court to review the findings with that standard.

Defendant's third argument was that the due process provisions were not applicable to Plaintiff because he was terminated for official misconduct and serious neglect in the performance of duty. This is a two-part analysis: 1) is Plaintiff a public official; and 2) if yes, was there official misconduct and serious neglect in the performance of duties? Because there is a genuine issue of material fact in this regard, summary disposition in favor of either party is not appropriate.

The circuit court declined to reconsider its decision regarding the claim under the WPA, indicating that there was no substantive basis for altering its ruling. Furthermore, the court denied plaintiff's motion for leave to amend the complaint, citing that the request was excessively delayed and ultimately futile. The court emphasized that "the plaintiff has a due process argument under the VPA and that there are remedies available to him under the VPA." The court concluded that permitting the plaintiff to pursue a federal due process claim would undermine the remedies established by the VPA. Subsequently, this appeal was filed.

## II. STANDARD OF REVIEW

This Court reviews de novo a circuit court's ruling on a motion for summary disposition, *Vayda v Lake Co*, 321 Mich App 686, 692; 909 NW2d 874 (2017), and this Court reviews for an abuse of discretion a circuit's decision on a motion for reconsideration, *In re Estate of Moukalled*, 269 Mich App 708, 713; 714 NW2d 400 (2006). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes," *Tripp v Baker*, 346 Mich App 257, 274; 12 NW3d 45 (2023) (quotation marks and citation omitted), and a court necessarily abuses its discretion if its ruling is based on an erroneous application or interpretation of law. *Gay v Select Specialty Hosp*, 295 Mich App 284, 291-292; 813 NW2d 354 (2012).

Summary disposition under MCR 2.116(C)(8) is properly granted if the "opposing party has failed to state a claim on which relief can be granted." When deciding a motion under MCR

2.116(C)(8), a trial court must consider only the pleadings and accept all factual allegations as true. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

Summary disposition under MCR 2.116(C)(10) is properly granted if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion" and grant the motion only if "there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted).

A circuit court reviewing a final termination decision under the VPA is limited to reviewing whether the decision "was supported by competent, material, and substantial evidence." *In re Grant*, 250 Mich App 13, 18; 645 NW2d 79 (2002). This Court has explained this standard of review as follows:

> In applying the competent, material, and substantial evidence test, the circuit court must review the entire record, not just those portions supporting the lower tribunal's findings. Substantial evidence is any evidence that reasonable minds would accept as sufficient to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. If there is sufficient evidence, the circuit court may not substitute its discretion for that of the lower tribunal, even if the court might have reached a different result. Further, the tribunal's findings of fact are afforded deference. This is especially true with respect to witness credibility and evidentiary questions. [*Id.* at 18-19 (citations omitted).]

In turn, this Court's

> review of the circuit court's decision is limited to determining whether the court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." In other words, this Court reviews the circuit court's decision for clear error. A decision is clearly erroneous when, "on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." [*Id.* at 18 (citations omitted).]

The initial question of whether a particular veteran comes within the protection of the VPA and whether the VPA applies under the factual circumstances is a judicial question, properly reserved to the court to resolve. *DeGraaf v City of Allegan*, 91 Mich App 266, 270-271; 283

NW2d 719 (1979).[2] "It is only where the act is found to apply that the court would be limited to a review function and thus the record made in the administrative setting." *DeGraaf*, 91 Mich App at 271. Furthermore, although the circuit court is limited to a "review function" to determine whether competent, material, and substantial record evidence supported the termination of the plaintiff's employment in situations where the procedures in the VPA are followed and a proper decision to review has been rendered by the employer, the preliminary question whether the procedures specified by the VPA were violated is also a preliminary issue to be resolved by the court. *Egan v City of Detroit*, 150 Mich App 14, 20; 387 NW2d 861 (1986); see also *In re Grant*, 250 Mich App at 14-17 (reviewing the issue whether the defendant employer complied with the procedural requirements of the VPA de novo "to the extent that resolution of [the] matter require[d] that [the Court] interpret the provisions of the VPA").

This Court reviews de novo the circuit court's decisions on matters of law, including the circuit court's interpretation and application of the VPA and other statutory provisions. *In re Grant*, 250 Mich App at 14-15; *Leelanau Co Sheriff v Kiessel*, 297 Mich App 285, 292; 824 NW2d 576 (2012). To the extent factual findings are necessary to determine whether a plaintiff comes within the protections of the VPA, this Court reviews the circuit court's factual findings for clear error. *DeGraaf*, 91 Mich App at 271-272. However, in the present case, the circuit court's decision was made in the context of resolving a motion for summary disposition and it therefore was precluded from making any findings of fact at this juncture. *Patrick v Turkelson*, 322 Mich App 595, 605-606; 913 NW2d 369 (2018) ("[I]t is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper.") (quotation marks and citations omitted; alteration in original).

III. ANALYSIS

This Court has explained the general nature of the VPA as follows:

"The VPA was enacted for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service." *Sherrod v Detroit*, 244 Mich App 516, 523; 625 NW2d 437 (2001) (quotation marks and citation omitted). The VPA "entitles a veteran to notice and a hearing before his employer may take any action against him with respect to his employment" and "converts at-will public employment positions into ones that are terminable only for just cause." *Id.* Because the conversion of at-will public employment into just-cause employment gives a veteran a property interest in continuing such employment once it is secured, failure to comply with the procedural requirements of the VPA may support a due-process claim. *Id.* Further, failing to provide notice and a hearing in violation of the VPA subjects the offender

---

[2] Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority. *Estate of Carlson v Southwest Mich Emergency Servs., P.C.*, 338 Mich App 678, 695; 980 NW2d 785 (2021).

-10-

to criminal prosecution. *Jackson v Detroit Police Chief*, 201 Mich App 173, 177; 506 NW2d 251 (1993); MCL 35.403. [*Vayda*, 321 Mich App at 693.]

The first question is whether the VPA applies to plaintiff. Defendants argue that plaintiff could not claim the protections of the VPA because he was a "first deputy" to the city manager.

Under MCL 35.402, "No veteran[3] . . . holding an office or employment in any public department or public works of . . . any . . . city . . ., *except* heads of departments, members of commissions, and boards and heads of institutions appointed by the governor and officers appointed directly by the mayor of a city under the provisions of a charter, and *first deputies of such heads of departments, heads of institutions and officers*, shall be removed . . . except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency; and such veteran shall not be removed . . . for any cause above enumerated from any office or employment, except after a full hearing . . . before the mayor of any city . . . or before the commission of any such city . . . operating under a commission form of government, if an employee of a city . . ., and at such hearing the veteran shall have the right to be present and be represented by counsel and defend himself against such charges . . . ." (Emphasis added.) Hence, "[t]he only veterans employed by state and local governments who are not protected by the VPA are department heads, members of commissions and boards, heads of institutions appointed by the governor, officers appointed by a city's mayor under the city's charter, and *first deputies of such people*." *Jackson*, 201 Mich App at 175 (emphasis added).

The parties in this case disagreed regarding the circuit court's role in assessing whether plaintiff qualified as a first deputy and thus fell outside the protections of the VPA. Defendants argued that the circuit court's responsibility was merely to review the mayor's determination through the lens of the substantial evidence test. However, established jurisprudence from this Court clearly indicates that this preliminary issue should be determined directly by the court, without granting the same level of deference to the public body's decision that is typically afforded under the substantial evidence test. This approach not only upholds the integrity of the judicial process but also ensures a fair evaluation of the plaintiff's qualifications.

In *DeGraaf*, 91 Mich App at 267, this Court addressed the nature of "the circuit court's role in a suit involving an alleged violation of the Veterans Preference Act." The plaintiff in that case had been a part-time police officer for the defendant city. *Id*. at 267. After the plaintiff's last day of employment, he requested and was granted a VPA hearing, and the city council concluded that the plaintiff was not entitled to the protections of the act. *Id*. at 268. The plaintiff filed an action in the circuit court seeking review of the city council's decision. *Id*. The circuit court determined that before it could review the VPA hearing, it was first required to decide whether the plaintiff had been entitled to the hearing. *Id*. After taking testimony on the matter, the circuit court found that the plaintiff had quit voluntarily and had not been fired. *Id*. The circuit court dismissed

---

[3] For purposes of the VPA, a "veteran" is "an individual who . . . [i]s a veteran as defined in . . . MCL 35.61" and who "[w]as honorably discharged." MCL 35.401(2). "Veteran" is defined in MCL 35.61 to mean "an individual who served in the United States Armed Forces, including the reserve components, and was discharged or released under conditions other than dishonorable."

the case after concluding that a veteran who voluntarily left employment did not have any rights under the VPA. *Id.*

On appeal, this Court agreed that "[f]rom the language used [in MCL 35.402,] it is implicit that a veteran who quits his employment is not entitled to a hearing under this section." *Id.* at 269. This Court then addressed the second question whether the circuit court was "limited to the record made before the hearing body" or whether it could instead "take evidence and make findings of fact concerning the circumstances surrounding the termination of employment and, thus, whether plaintiff was entitled to a hearing in the first place[.]" *Id.* at 268-269, 270. This Court approved the circuit court's approach, reasoning as follows:

> The questions of whether the act applies to a veteran who voluntarily leaves his job and whether the plaintiff here did so are judicial questions. There is nothing to prevent the circuit court from determining whether the act applies to the facts as it finds them. *It is only where the act is found to apply that the court would be limited to a review function and thus the record made in the administrative setting*. The court did not err in reserving unto itself the determination of the act's applicability, the question being a purely judicial one. [*Id.* at 270-271 (emphasis added).]

This Court then affirmed the circuit court because, based on the testimony taken by the circuit court, the circuit court's factual finding that the plaintiff had voluntarily quit his job was not clearly erroneous and the plaintiff was therefore not entitled to a VPA hearing. *Id.* at 271-272.

Similarly, here, the circuit court did not err by determining that it must address the threshold question whether the VPA applied to plaintiff, and, contrary to defendants' contention, the circuit court was not limited with respect to this particular inquiry solely to reviewing the record created in the VPA hearing process. *Id.* at 270-271. The circuit court also was not limited in this inquiry to reviewing the matter under the substantial evidence test. *Id.*; *Egan*, 150 Mich App at 20.

We conclude it was not erroneous for the circuit court to recognize the necessity of addressing the question whether the VPA applied. However, there was conflicting evidence on the issue of whether or not plaintiff was a "first deputy."

As an initial matter, ascertaining the meaning of the term "first deputies" for purposes of MCL 35.402 presents an issue of statutory interpretation. Statutory interpretation is an issue of law. *Leelanau Co Sheriff*, 297 Mich App at 292. This Court "give[s] every word or phrase of a statute its plain and ordinary meaning unless a statutory term has a special, technical meaning or is defined by the statute itself." *Vayda*, 321 Mich App at 697.

There is no definition of "first deputies" within MCL 35.402 or the other provisions of the VPA. In *Jackson*, 201 Mich App at 175, this Court stated that a police department commander was not a first deputy of the police chief. In *Cremer v Bd of Rd Comm'rs of Alger Co*, 325 Mich 27, 32; 37 NW2d 699 (1949), our Supreme Court held that the plaintiff employee was not a first deputy under the VPA because, although he was a foreman, he was "one of several foremen" employed by the defendant board of county road commissioners and had never been designated as a head of department of first deputy of the head of a department. This Court has also held that by

limiting the exception in the VPA to "first deputies," the Legislature implied that other deputies are still protected by the VPA. See *Leelanau Co Sheriff*, 297 Mich App at 294-295 (specifically addressing deputy sheriffs). "[I]n the absence of a statutory definition or a special, technical meaning, [this Court] may consult a dictionary to ascertain the plain and ordinary meaning of a statutory term." *Vayda*, 321 Mich App at 697. A deputy is a "person appointed or delegated to act as a substitute for another, esp. for an official." *Black's Law Dictionary* (12th ed).

Here, there was conflicting evidence on the precise nature of plaintiff's job duties and responsibilities as assistant to the city manager. There was evidence that plaintiff's essential job duties included representing the city manager when the city manager was absent, and there was evidence that Sinadinoski entrusted plaintiff with sensitive matters. There was also evidence that Richards considered plaintiff's position to be essentially clerical in nature and that Richards did not believe plaintiff's position included responsibilities equivalent to a first deputy. According to Richards, it was the consistent practice of the city council to designate the city clerk/treasurer as the substitute for the city manager when necessary, and the council had actually designated the city clerk/treasurer to be the substitute city manager when Richards retired. Richards also indicated that plaintiff did not supervise any staff and was not required to take an oath of office.

Without resolving these factual disputes, it is not possible to determine the degree to which plaintiff could be considered a deputy of the city manager, much less the *first* deputy. Thus, it is not possible to resolve this question at this stage because doing so would require impermissible fact finding by the court on summary disposition. *Patrick*, 322 Mich App at 605-606. The circuit court in the present case concluded that plaintiff was not a "first deputy" by making fact finding and credibility determinations, basing its decision primarily on its finding that the opinions of Richards were credible. The trial court's conclusion in this respect was therefore erroneous. *Id*.

However, even assuming without deciding that the VPA applied, the next question becomes whether the VPA was violated. *Egan*, 150 Mich App at 20; *In re Grant*, 250 Mich App at 15, 18 ( stating that the "first issues to be resolved in this matter are whether defendant complied with the procedural requirements of the VPA in discharging plaintiff and, if not, what remedies are available to plaintiff as a result of that failure," and further stating that the next consideration was "whether the township board's decision to terminate plaintiff was supported by competent, material, and substantial evidence").

The circuit court recognized that this was a distinct issue from the issue whether the final termination decision was justified, characterizing plaintiff's claim as an allegation that his right to due process was violated by defendants' failure to abide by the procedural requirements of the VPA. Although plaintiff's first amended complaint did not explicitly refer to his due-process rights, the "failure of a defendant to comply with the procedures contained in the VPA may support a due process claim." *Sherrod*, 244 Mich App at 523. Plaintiff clearly alleged that the procedures of the VPA had been violated by defendants. Thus, the circuit court's characterization was supported by the factual and procedural history of the case.

This type of due-process claim "depends on [plaintiff] having a property right in continued employment." *Id*. This Court has further explained:

The VPA is in the nature of civil service law and because it converts at-will public employment into just-cause employment, it grant[s] the plaintiff a property right in continued employment. Once a state legislature confers a property interest in public employment, the employer may not deprive the employee of the interest without "appropriate procedural safeguards." Generally, notice and the opportunity for a hearing must precede the deprivation of the property interest. However, the pretermination hearing, though necessary, need not be elaborate, and something less than a full evidentiary hearing is sufficient. [*Id*. at 523-524 (citations omitted).]

Here, it was undisputed that plaintiff was given both an oral and written indication that his employment was terminated on April 1, 2021, before he received any type of hearing under the VPA. Thus, there is no question of material fact that the VPA was violated. *In re Grant*, 250 Mich App at 15-17 ("In this case, it is undisputed that plaintiff was never afforded such notice and was removed before a hearing before defendant's township board, in clear violation of the quoted statutory language [from MCL 35.402] . . . we conclude that defendant violated the VPA when it failed to afford plaintiff a full hearing before discharge.").

However, the VPA provides only limited relief for its violation. *Id*. at 17. A "violation of the VPA may be a criminal misdemeanor subject to a fine or imprisonment." *Id*., citing MCL 35.403.

"[T]he remedy the VPA provides for a violation of the right to notice and a hearing is not automatic reinstatement with back pay. Because plaintiff was demoted without a hearing, he was required to file a written protest with the mayor or he would be deemed to have waived the protections of the VPA. MCL 35.402[ ]. If plaintiff filed such a protest, the mayor would be required to conduct a hearing, or refer the protest to the city's legal department to conduct a hearing. *Id*. Plaintiff would be entitled to back pay only if the mayor found plaintiff's allegations to be true and determined that he should be reinstated." [*In re Grant*, 250 Mich App at 17, quoting *Jackson*, 201 Mich App at 177 (alterations in original).]

Here, plaintiff asserted his rights under the VPA after his termination and received a hearing. Contrary to plaintiff's assertions, the hearing was not required to be elaborate or equivalent to a full evidentiary hearing. *Sherrod*, 244 Mich App at 524. The ultimate question thus becomes whether plaintiff's termination was justified. *In re Grant*, 250 Mich App at 17. This Court has explained:

MCL 35.402[ ] entitles veterans removed from public employment to back pay only in situations where they are reinstated. We also are reluctant to award back pay in situations where a discharge is substantially proper but procedurally deficient. Because defendants discharged plaintiff for cause, he suffered no economic loss. An award of back pay would serve only to penalize defendants. [*In re Grant*, 250 Mich App at 17 (quotation marks and citation omitted; alteration in original).]

This Court's decision in *In re Grant* indicates that the question whether plaintiff's discharge was substantially proper is still to be reviewed by the circuit court under the substantial evidence test even though the claim has been brought more in the nature of a challenge to the

defendant's failure to properly follow the procedural requirements of the VPA than a typical appeal of the termination decision per se. *In re Grant*, 250 Mich App at 18 (stating that the proper standard of review to be applied by the circuit court with respect to the public employer's decision to terminate the plaintiff veteran's employment is whether the decision was "supported by competent, material, and substantial evidence"). The fundamental question in this context pertains to the justification of plaintiff's discharge. This inquiry necessitates an assessment that affords appropriate deference to the decisions made by the terminating public body, in accordance with the substantial evidence test. It is imperative that this evaluation reflects a balanced consideration of all relevant factors involved. This Court, in turn, reviews the circuit court's decision to determine "whether the court 'applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.' " *Id*. (citation omitted).

Here, the circuit court expressly declined to apply this test and therefore erred as a matter of law. *Id*. Because the circuit court's decision was based on fundamental misunderstandings of the legal framework, impermissible judicial fact finding on summary disposition, and its failure to properly apply the substantial evidence test, we vacate the circuit court's rulings regarding the VPA. *Id*.; *Patrick*, 322 Mich App at 605-606.

Turning to the WPA claim, MCL 15.362 provides that an "employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action." "To establish a prima facie case under this statute, a plaintiff must show that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003).

Here, the circuit court provided the following analysis regarding its decision to grant in part and reserve decision in part on the summary disposition motion with respect to the WPA claim:

> The first issue to address is whether Plaintiff was engaged in a protected activity. "An employee is engaged in protected activity under the WPA who has reported or is about to report, a suspected violation of law to a public body." [*Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 610; 566 NW2d 571 (1997)]. The facts of the alleged reporting are not disputed. Plaintiff and Carlock exchanged a total of four emails on March 31, 2021 between 11:28am and 2:47pm. (See attached emails).
>
> Plaintiff argues that he was engaged in a protected activity - namely that on March 30, [sic] 2021, he reported to Carlock, a DNR employee, that the Walstrom Dock and Dredge commercial barge at the Park was a violation or suspected

-15-

violation of law which he believed involved the misuse or misappropriation of public resources, funds and/or parkland for inappropriate commercial use of public property by Walstrom Dock and Dredge and also that the proposed use by the Chamber would similarly violate the law. He further argues that additional retaliation occurred after he invoked his rights under the VPA on April 30, 2021, and in the ensuing weeks when he objected to the hearing process as a violation of his due process rights.

In reviewing the evidence in a light most favorable to the Plaintiff, the evidence does not support a finding that Plaintiff was engaged in "protected activity." First, there has to be a suspected violation to report. Plaintiff's initial email contains inaccurate information regarding the Walstrom barge operating on city owned property. In fact, Plaintiff acknowledges that in his follow-up email at 1:35pm to Carlock. Moreover, there has been no evidence presented that the City was violating the terms of the grant due to Walstrom's activities and/or that the City was aware of same and failed to take action.

Further, Plaintiff testified that he sent the initial email out of due diligence to ascertain if the Chamber could move into the existing building at Ford Park. He never testified that he intended to report a violation of law to the DNR. Rather he testified, "So therefore, by me contacting the state, and I didn't do it intentionally, I mean I didn't do it to embarrass anybody, it was just part of my due diligence, it was just part of my job."

The purpose of the WBA [sic] is to alleviate "inability to combat corruption or criminally irresponsible behavior in the conduct of government or large business." In this case, if one omits the reference to the Walstrom barge and the Chamber negotiations, as well as Plaintiff's own personal opinion, his email boils down to a request for information regarding the use of grant funds. Such a request does not rise to the level of "reporting a suspected violation." of law." [sic] Plaintiff's emails do not fall within protected activity as contemplated by the WPA.

Plaintiff also argues that his demands under the VPA following this meeting contributed to the retaliation against him and ultimately his discharge. A decision on this issue rests on the outcome of the VPA claim. Therefore, the Court will defer decision on this issue until the VPA claim is resolved. [Some citations omitted.]

As an initial matter, the circuit court's ruling that plaintiff was not engaged in protected reporting activity while communicating with Carlock appears to be based on the court's assessment of what it believed to be plaintiff's motivations underlying his communications. However, "a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity [for purposes of the WPA] and . . . proof of primary motivation is not a prerequisite to bringing a claim." *Whitman v City of Burton*, 493 Mich 303, 306; 831 NW2d 223 (2013). "MCL 15.362 does not address an employee's 'primary motivation,' nor does the statute's plain language suggest or imply that *any* motivation must be proved as a prerequisite for bringing a claim." *Id*. at 313.

Moreover, the circuit court's analysis regarding the e-mails is based on judicial fact finding. The e-mails, which were attached to plaintiff's first amended complaint, indicate that plaintiff first contended that the city was allowing the barge operation to use "the public boat ramp in Ford Park" and then backtracked in a subsequent e-mail by indicating that the barge operation was not using the city's "docks" and further explaining the temporary nature of the barge operation's presence. Carlock's response to that email seemed to indicate that she still thought the barge operation was at least potentially problematic because it may still be considered a "conversion"[4] situation. With respect to the Chamber of Commerce, it appears that both plaintiff and Carlock believed it would be legally impermissible for the Chamber of Commerce to lease the building at issue.

The circuit court, on summary disposition, engaged in an assessment of whether plaintiff and Carlock were correct in their beliefs. Such assessment was not based on any legal authority regarding the uses of the park docks and building and not based on any requirement under the WPA that a plaintiff's assessment of the legality of the conduct reported must actually be correct as opposed to merely not being knowingly false. See MCL 15.362. The circuit court's assessment attempted to resolve the factual ambiguities that appear in the email conversation, which is improper on summary disposition. *Patrick*, 322 Mich App at 605-606. The trial court's ruling in this respect is therefore vacated. *Vayda*, 321 Mich App at 692.

The remainder of the circuit court's analysis under the WPA flows from an erroneous understanding and application of the VPA, as did its decision on plaintiff's motion for leave to amend the complaint. We therefore vacate both of these rulings as well[5] so the trial court may address the issues in the first instance under the proper legal framework. *Id.*; see also *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018)

We vacate the rulings challenged on appeal as stated in this opinion. Our decision does not have any effect on the circuit court's ruling regarding the breach-of-contract claim because that claim was not challenged on appeal. We remand this matter for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel

---

[4] It appears from the e-mails that Carlock referred to uses that were inconsistent with the conditions imposed on Land and Water encumbered properties as causing "conversions" of the property that would interfere with future applications for grants.

[5] Although a trial court's ruling on a motion for leave to amend is reviewed for an abuse of discretion, a court necessarily abuses its discretion if its ruling is based on an error of law. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018).